MONTGOMERY WARD & CO., INC. *v.* COOPER

[No. 40, September Term, 1967.]

*Decided February 6, 1968.*

The cause was argued before HAMMOND, C. J., and HOR-
NEY, BARNES, McWILLIAMS and FINAN, JJ.

*William C. Miller,* with whom were *Miller & Miller* on the brief, for appellant.

*Irwin G. Meiselman,* with whom were *Sidney M. Goldstein, Arthur S. Feld* and *Maurice R. Dunie* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

This appeal presents rather narrow issues in regard to the admissibility of certain evidence relating to the damages suffered by Grace R. Cooper (Mrs. Cooper), the appellee and plaintiff below, resulting from the negligence of Montgomery Ward & Co., Inc. (Montgomery Ward), the appellant.

Mrs. Cooper, while properly at Montgomery Ward's Wheaton Plaza Store in Montgomery County, was struck on the head by a sign from a tile display on April 13, 1963. In due course she filed an action against Montgomery Ward to recover for alleged damages resulting from its negligence. The trial court (Mathias, J.) allowed Dr. Robert Young, an internist, called to testify for the plaintiff, to testify in regard to the causal connection between the injury to Mrs. Cooper caused by the falling sign and her later disabilities. The jury found a verdict for Mrs. Cooper for $7,500 and from the judgment entered on this verdict Montgomery Ward has timely appealed to this Court. No issue is raised by Montgomery Ward in regard to primary negligence.

Dr. Young was the only medical witness called by Mrs. Cooper. He was her treating physician, she having been his patient since 1958. He was duly licensed to practice medicine in both Maryland and the District of Columbia and had practiced medicine for eleven years at the time of the hearing in the trial court. Prior to April of 1963, Mrs. Cooper was also treated by Dr. MacPherson Brown for an arthritic condition.

On April 22, 1963, Dr. Young saw Mrs. Cooper at his office. He testified from his record in her case in regard to the history Mrs. Cooper gave him as follows:

> "* * * a board fell on her head at Montgomery Ward's Store on 4-13-63; that she got a bump on the head and two days later, she began to have the head-

aches. The headaches were located in the front of the head where she was struck and radiated back to the point of the head, we call this the occiput. There was tenderness over the spot of the blow and upon palpation there was pain that would shoot posteriorly at the time to the back of the head. She complained that the pain kept her awake, making it difficult to work. She was examined at this time neurologically, the eye grounds at the back of her eyes were looked at to see if there was any damage to the brain; that is a way of looking into the brain and that was normal. On April 16, 1963, about three days after the injury, she awoke vomiting."

Dr. Young prescribed codeine for the pain and a drug called somma, which is administered as a muscle relaxant for muscle spasms which Mrs. Cooper was having. He decided that Mrs. Cooper should be hospitalized in October, 1963, and gave his reasons for his decision as follows:

"She was complaining of intense headaches and she had symptoms of abdominal pain, and she was in the state of extreme shock, and it was felt that hospitalization would be better indicated, in order to better work on the problem, this is done so the patient can get some rest and the different tests can be made, such as x-ray and so forth."

At that time Dr. Young determined that Mrs. Cooper had a colitis condition and confirmed her arthritic condition. She was hospitalized for four or five days in October, 1963, (beginning October 6, 1963) and was again hospitalized on January 31, 1964, staying in the hospital on the last occasion for 22 or 23 days. Dr. Young stated that Mrs. Cooper was hospitalized in January, 1964, for the following reasons:

"I was called several times to see her at home because of spells of tension, that were characterized by rapid heart rate, profuse sweating, unable to stand up, unsteadiness of gait, and I felt again that there were probably other forces at work, other than what we had

known and she was unable to work at that time, and it was felt that hospital rest, proper sedation and diagnostic studies would be indicated."

Prior to April, 1963, Mrs. Cooper had never complained of having headaches. After April 13, 1963, she had headaches and in August, 1963, was again given codeine. Her codeine prescriptions were renewed periodically for a year to a year and one-half, but Dr. Young was concerned that the patient might develop a codeine habit, and stopped prescribing this drug.

Prior to April, 1963, Mrs. Cooper had been a vivacious person who was working hard, supporting herself and her son, but after the accident Dr. Young testified, over objection of counsel for the defendant, that it appeared to him that "she began to progressively go down hill." She appeared "to lose a considerable amount of vitality, lost 5 or 10 pounds, and looked older as the year went on." She was considerably more introspective and was "very, very nervous about her symptoms." Dr. Young was then examined as follows:

"Q. Can you tell with a reasonable degree of medical certainty whether or not her headaches were the result of being struck on the head?
A. Yes.
"The Court: What was your answer, doctor?
A. Yes, I said yes."

He then declined to state that the accident had aggravated Mrs. Cooper's colitis condition. He then testified:

"Q. Are you able to relate, with reasonable medical certainty, the nausea or dizziness—and or dizziness, to the accident? A. In one way a lot of these symptoms are related to the accident—or could be related to the accident. To give me a specific symptom and say, is this related to the accident? I would have to say, no."

He was then given the hospital bill for the October, 1963, hospitalization, stated that not all of the items were rendered as a result of the accident, listed those he thought did so result

and then testified that the value of the items so listed were the reasonable value for the services rendered. He was then shown a statement of services rendered in the Washington Hospital Center from January 31 to February 21, 1964, plaintiff's exhibit No. 3, and after stating that he had ordered the hospitalization, testified as follows:

"Q. Are any of the items on this statement—or for any of the services rendered given as a direct result of the accident of Mrs. Cooper on April 13, 1963? A. Yes.

"Q. Would you underline the items that, in your opinion, were a direct result of the accident? A. May I make an explanation? That hospitalization was the result of her extreme tension; what was reflected in her symptoms as stated before, the increase in sweating, rapid heart rate and so on.

"These symptoms are psychological in origin, as was shown in her case; that had become a more intense situation and either of these hospitalizations were to eliminate the possibility of any other diseases imitating, what we felt to be a strictly psychological illness. Therefore, I am familiar with the entire hospitalization and feel it was probably due to the tension and worsening condition, which we felt was from the accident.

\* \* \*

"Q. Doctor, with reasonable medical certainty, could you tell us what you attributed this circulatory problem to? A. To the emotional state of the patient.

"Q. And with reasonable medical certainty, could you determine what caused the emotional state? A. From my records, I feel that she had not had this symptom prior to the accident. I feel that subsequent to the accident, the change in the patient's emotional condition, indicated there was some relationship."

After establishing his knowledge in regard to the reasonableness of the charges, Dr. Young testified that the charges on plaintiff's exhibit No. 3 were reasonable and, over objection of

counsel for the defendant, that the entire statement of services was the result of the accident. Plaintiff's exhibit No. 3 was then, again over objection, admitted into evidence.

On cross-examination Dr. Young stated, *inter alia*:

"Q. Now doctor, I believe you stated that the entire treatment in the hospital on January 31 of '64, was a result of the April 13, 1963, accident. Could you be in error in that statement? A. I don't believe that I'm in error in that statement.

\* \* \*

"Q. And so, how can you say the entire treatment was the result of the accident? A. Because we came up with no other diagnosis and stenosis can be a silent partner and there was swelling and tenderness in the general area at the time.

"Q. Now, you feel that way, but do you base it on a reasonable medical certainty? A. Yes, I do.

"Q. That all of the charges are the result of this accident? A. Yes.

"Q. Yet you say that aortic stenosis, heart disease, is not caused by the accident? A. Yes.

"Q. And that rheumatoid arthritis was not caused by the accident? A. That's right."

Montgomery Ward asserts two contentions: (1) that the trial court erred in admitting plaintiff's exhibit No. 3 into evidence because there was no causal connection shown to exist, with a reasonable degree of medical certainty, between the accident of April 13, 1963, and the hospitalization of January 31, 1964, and (2) that the trial court erred in permitting Dr. Young to testify to a worsened condition of Mrs. Cooper resulting from the accident of April 13, 1963. We are of the opinion that the trial court committed no error in admitting the physician's testimony and will affirm the judgment in this case.

## (1)

In considering the admissibility of plaintiff's exhibit No. 3 and the causal connection of the services set forth on that exhibit and the accident of April 13, 1963, the test to be applied

was stated by Judge (later Chief Judge) Prescott in *Ager v. Baltimore Transit Company,* 213 Md. 414, 421, 132 A. 2d 469, 473 (1957), as follows:

> "Maryland cases, in accord with these well-recognized and established principles are all consistent in rejecting the proposition that the jury may form a judgment or conclusion on the basis of testimony which admits of mere possibilities and have stated in various cases that the test to be applied, whether the question involved is the existence of an injury or its cause, is reasonable probability or reasonable certainty. [Citing many prior Maryland cases]."

In our opinion, taking Dr. Young's testimony as a whole, it would permit the jury to find that the hospital services listed on plaintiff's exhibit No. 3 resulted from the accident.

Montgomery Ward points out that in two places in his testimony Dr. Young used the words "we felt" to indicate that Mrs. Cooper was suffering from a psychological illness and that the hospitalization resulted from the accident and on one occasion indicated that there was "some relationship."

The use of the words "feel" or "felt" to indicate an opinion is a frequent one, and we observe that in *Walters v. Smith,* 222 Md. 62, 64, 158 A. 2d 619, 620 (1960), the physician in that case used the word "feel" to indicate his opinion that the accident materially aggravated the situation. This Court held that his answer, with other answers, should have taken the case to the jury in that case. See also *Charlton Bros. Transporation Co. v. Garrettson,* 188 Md. 85, 51 A. 2d 642 (1947). In several instances, already above set out, Dr. Young indicated a causal connection, based on reasonable medical probability, between the hospital services and the accident. There was no evidence and there were no permissible inferences in the evidence that there was any cause for Mrs. Cooper's condition after the accident as equally probable as the accident. *Walters v. Smith, supra.*

Montgomery Ward relies on *Wilhelm v. State Traffic Commission,* 230 Md. 91, 185 A. 2d 715 (1962). In our opinion this reliance is misplaced, in that in *Wilhelm* the Court was

careful to point out that the physicians had not "testified that the accident caused, produced or precipitated any emotional involvement, neurosis or other psychological disorder in the appellant." (230 Md. at 98, 185 A. 2d at 718). Dr. Young's testimony is quite different in the present case.

In *Hughes v. Carter,* 236 Md. 484, 204 A. 2d 566 (1964), which involved a question of the causal relationship of a condition of pneumonia to an automobile accident, the attending physician, called by the plaintiff, was far from positive in his testimony in regard to the causal connection. He first said that such causal relationship "was possible," then that "it was probable" and finally that he would not "pin it down" but "thought it was possible." We held in *Hughes* that there was sufficient evidence in that case of a causal connection to be submitted to the jury. It seems apparent that if the attending physician's testimony in *Hughes* was sufficient evidence of causal connection, Dr. Young's testimony in the present case is quite sufficient. We so hold.

### (2)

In our opinion, the trial court did not err in permitting Dr. Young to testify to the worsened condition of Mrs. Cooper resulting from the accident of April 13, 1963. Montgomery Ward urges that Dr. Young's testimony that Mrs. Cooper progressively went down hill after the accident and lost a considerable amount of vitality would enable the jury to speculate or guess in regard to the causal connection between the accident and Mrs. Cooper's subsequent condition. Dr. Young, however, testified that as a result of the accident she had headaches. He indicated that the patient "did not have an intense emotional problem prior to the accident" and was of the opinion that "subsequent to the accident, the change in the patient's emotional condition indicated there was some relationship." In summing up, Dr. Young stated: "It's my opinion that the *entire treatment* up through 1965 was a result of the accident, that was the instigating force in her emotional problems." (Emphasis supplied). On cross-examination he stated that he based his conclusion on reasonable medical certainty "since he had seen her before the accident and she appeared psychologically all

right and after the accident she was not psychologically all right, the accident caused this."

Montgomery Ward had the right at the trial to show, if it could, by medical testimony that the conditions of which Mrs. Cooper complained were not caused by the accident. It chose not to do this so that Dr. Young's expert medical testimony was unimpeached and uncontradicted. In our opinion, it warranted submission by the trial court to the jury. *Hughes v. Carter, supra.*

*Judgment affirmed; the appellant to pay the costs.*