SUN CAB COMPANY, INC. *v.* JAMES PHILIP CARTER ET UX.

[No. 234, September Term, 1971.]

*Decided February 9, 1972.*

396

The cause was argued before ANDERSON, ORTH and CARTER, JJ.

*Matthew Swerdloff*, with whom were *Edward P. Murphy* and *Swerdloff, Albert & Lasover* on the brief, for appellant.

*John J. Hirsch*, with whom was *Daniel Cohen* on the brief, for appellees.

ORTH, J., delivered the opinion of the Court.

By declaration twice amended JAMES PHILIP CARTER and HENRIETTA CARTER, his wife, appellees, sued SUN CAB COMPANY, INC. (Sun Cab), appellant, in tort in the Superior Court of Baltimore City claiming, on behalf of Mr. Carter, damages arising from injuries to his person and property, and, on behalf of Mr. and Mrs. Carter, damages for loss of consortium, resulting

from an accident involving an automobile operated by Mr. Carter and a taxicab operated by Thomas T. Rosiak, an employee of Sun Cab.[1] Sun Cab pleaded the general issue. See Maryland Rule 320 d 6 (b). As the case went to the jury they were to determine only the issue of damages. The jury found a verdict for Mr. Carter and assessed damages in his favor in the amount of $20,945.40, and a verdict for Mr. and Mrs. Carter and assessed damages in their favor in the amount of $1,500. Judgments nisi were entered. Sun Cab appeals from the judgments absolute entered in due course.

## I

Appellees showed the facts and circumstances of the accident through the testimony of Mr. Carter and Rosiak. It was adduced from them that Lombard Street, running east and west, was a favored street at its intersection with Conkling Street running north and south, there being a stop sign on Conkling Street controlling northbound traffic entering the intersection. About 6:20 p.m. on 13 February 1966 Rosiak, in the course of his employment, was driving his cab in a northerly direction on Conkling Street. Going about 20 miles an hour, he entered the intersection of Conkling and Lombard Streets without stopping. He tried to apply the brakes but the "vehicle just kept on going." The cab struck the car being operated by Mr. Carter in an easterly direction on Lombard Street at a speed of about 15 miles an hour. The front end of the cab struck the middle right side of Carter's car. The impact occurred, according to Rosiak, about 5 to 8 feet into the intersection, "just past the cross walk. I wasn't completely into the intersection. * * * I wasn't halfway into the intersection. I was just part of the way into it." This evidence was uncontroverted.

At the close of the evidence offered by appellees, ap-

---

1. The first amendment added Mrs. Carter as a party plaintiff and the claim for loss of consortium. The second amendment increased Mr. Carter's claim for damages to $100,000. See Rule 320 a 1.

pellant moved for a directed verdict, including as a ground therefor that Carter was contributorily negligent as a matter of law. Rule 552 a. The motion was denied. Appellant then offered evidence and by so doing withdrew the motion. Rule 552 b. Appellant renewed the motion at the close of all the evidence and it was denied. Appellees moved for a directed verdict "as to negligence" and the court said: "I will grant the plaintiffs' motion for a directed verdict as to negligence. We have previously discussed the issue of contributory negligence and I have indicated to the defendant that I saw no evidence of contributory negligence in the case." Counsel for appellant said, "I will take my exception relative to that when the Court directs the verdict to the jury and not at this time." [2] The court instructed the jury:

> "From the uncontroverted evidence in this case it is clear that the accident was caused by the cab driver's failure to stop at the stop sign, and therefore you are instructed as a matter of law that the defendant Sun Cab Company, Inc. was negligent and its negligence caused the accident. Thus the only issues for you to decide in this case are with respect to damage."

See Rule 552 e; *Brown v. Ellis,* 236 Md. 487. At the conclusion of the charge appellant excepted to the court's "granting of a directed verdict as to negligence in this case on the issues of primary negligence and contributory negligence", and stated grounds therefor. Appellant also excepted to the failure of the court to grant its prayer no. 6 which included a request to instruct "If the Jury believes from the evidence that the Defendants were guilty of negligence, yet if they find from the evidence that the Plaintiff was also guilty of negligence and that such negligence contributed to the happening of the accident then the verdict of the Jury must be for the De-

2. Rule 552 a provides that an objection on behalf of the adverse party to a directed verdict shall be entered as of course.

fendants without regard to whose negligence was the greater."

On this state of the record appellant presents the question:

> "Did the trial court commit error in directing a verdict for the plaintiff on the question of the absence of any contributory negligence on the part of the plaintiff, James Carter; and additionally in instructing the jury to that effect?"

The argument under the question is headed: "The trial court committed error by directing a verdict in favor of the plaintiffs on the question of the contributory negligence, *vel non.*"

In arguing the question appellant concedes that no niceties of speed and distance are involved in the circumstances of the accident here. The basis of his contention relates solely to the question whether or not the lights on Carter's car were on at the time of the accident. Rosiak's testimony was that it was dark, "raining very hard", and "it was very little street illumination." According to Carter a light rain was falling but visibility was very good. "You could see ahead for a block, a block and a half or whatever your vision was at that time." He also said that "at that particular time that place is lit up like a Christmas tree" by a filling station on the corner. Rosiak said the lights of his cab were on but he "couldn't possibly say" if the lights of Carter's car were on. Carter said on cross-examination of him that it was dark enough for him to have his lights on. In answer to the question, "And you did have your lights on, correct?", he replied, "Yes, my lights were on." Counsel for Sun Cab referred to Carter's deposition of February 1968. He read from the deposition:

> " 'Q. What time of day or night was it?
> A. I don't recall the time.
> Q. You don't recall? You do recall the condition of the weather?
> A. Yes, there was light rain falling.

Q. Light rain falling, was it dark enough for you to have your lights on at that time?
A. No, no.' "

Counsel asked: "Now, which is correct, sir? Was it dark enough for you to have your lights on?" Carter said:

"Well, let me say it was—when that question was asked I had my lights on, but as I have stated when I get extremely upset the reason for that answer that he just read is when I get extremely upset I tighten the muscles on each side, also in back of my head. I become so upset that I become frightened and then the people and the faces in front of me they become unreal and all I see is a bunch of noise and all and they are doing is yelling and all and all I want to do is run, and when you ask me and I cannot give you—I lose all line of thought and I am not responsible for what comes out of me and that is why that came out of me, but my lights were on, check with the police officer, he should know."

Counsel again referred to the deposition, reading:

" 'Q. And you don't know whether your headlights were on or not?
A. My headlights were not on.
Q. The headlights weren't on?
A. It wasn't dark enough.
Q. To have the lights on?
A. To have the lights on.' "

Counsel inquired:

"Now, are you saying, sir, that 6:20 p.m. on February 13, 1966—* * * On that day with the light rain falling that it was not dark enough for you to have your headlights on?
A. I just made a statement and I said my headlights were on. I also made a statement saying

why I said that and as soon as I could get control of myself I made that correction. Now, what more can I say?

Q. If a light rain was falling was it necessary to have your windshield wipers on and working at the time?

A. Yes, my wipers were on and my lights were on."

As part of its case appellant offered into evidence those parts of the deposition of Carter which were read into the record during the cross-examination of Carter.[3] They were received without objection. Any part of a deposition of a party may be used by an adverse party[4] at the trial, so far as admissible under the rules of evidence, for any purpose. Rule 413 a 2. See *Bauman v. Woodfield*, 244 Md. 207. So a defendant may put a plaintiff's deposition in evidence as part of the defendant's case, so far as the deposition is admissible and relevant. *Raleigh Mfgs. v. Cantela*, 255 Md. 508. Such deposition can be used as substantive evidence even though the deponent is in court and available as a witness, *Zecca v. Claus*, 247 Md. 1, its use not being limited to impeachment of the adverse party, although it may be used for that purpose too if the adverse party testified, *Snowhite v. State ex rel. Tennant*, 243 Md. 291. And that the deposition conflicted with testimony at the trial did not prevent the testimony of the trial from having any weight, but went to its credibility and weight. *Campbell v. State ex rel. Dix*, 203 Md. 338. And we note that because appellant used Carter's deposition for a purpose permitted by Rule 413 a 2 Carter was not made appellant's witness thereby. Rule 413 c.

---

3. Appellant's counsel referred to specific pages and lines of the deposition but said: "I am not re-reading them at this time because I believe all of these have been previously referred to, but I want them as part of our case." The deposition itself is not included in the record sent us.

4. "Adverse party" as used in the Rule means a party to the action on the opposite side of an issue raised by the pleadings. *Raleigh Mfgs. v. Cantela*, 255 Md. 508.

In considering whether the verdict rightly was directed against appellant, we must consider the evidence in a light most favorable to it, resolving all conflicts in its favor and assuming the validity of all inferences which naturally and legitimately may be drawn from such evidence. *Vroom v. Arundel Gas Co.*, 262 Md. 657, 659; *Hynes v. Hutzler Bros. Co.*, 261 Md. 345, 346. The undisputed facts were that appellant's employee, Rosiak, driving a cab in the course of his employment, entered an intersection without stopping and yielding the right-of-way in obedience to a stop sign and struck a car driven by Carter. Code, Art. 66½, § 233 (b).[5] These facts provide a clear case for the application of the Boulevard Rule with Carter being the favored driver and Rosiak the unfavored driver. The two physical factors necessary for the application of the Rule were present: (1) a favored street intersected by an unfavored street on which traffic was required to stop by traffic control device—a stop sign—and to yield right-of-way to traffic approaching on the favored highway, and (2) a collision occurring as a direct consequence of the entrance of a vehicle onto a favored highway in disregard of its obligation to yield the right of way. As the Boulevard Rule was applicable Rosiak as the unfavored driver had an absolute duty to stop and an absolute duty to yield the right of way. *Thompson v. Terry,* 245 Md. 480, 486. Appellant does not dispute that because Rosiak did not stop he was negligent *per se* and that his negligence was the primary cause of the injury. But there was evidence adducing facts which were disputed. This evidence, when considered in the light most favorable to appellant, all conflicts being resolved in appellant's favor, and the validity of all inferences which naturally and legitimately could be drawn from such evidence being assumed, showed that it was dark and raining very hard, that there was very little street illumination at the scene of the accident, and that Carter's car lights were not turned on.

5. Now Art. 66½, § 11-403. See ch. 534, Acts 1970, made effective 1 January 1971 by § 19-107.

Appellant claims that the lights were required to be on by the provisions of Code, Art. 66½, § 271,[6] and that the failure to employ lights in the circumstances was "tantamount to contributory negligence; or at least makes same an issue for the jury."

The statutes requiring a driver to stop and yield the right of way at a stop sign do not relieve the favored driver of all duty to use care. *Savage v. Mills, Admr'x,* 237 Md. 204, 208. The favored driver does not have a complete and absolute right of way with no duty to exercise reasonable and ordinary care for his own safety. But the Court of Appeals has "* * * jealously guarded and upheld the favored driver's right of way in boulevard cases." *Brown v. Ellis, supra,* at 495. "Though the duty of the unfavored driver is not absolute, * * * it is rigorous and only in rare instances is it proper to submit to the jury the issue of negligence or contributory negligence on the part of the favored driver. * * *." *Dunnill v. Bloomberg,* 228 Md. 230, 235 (citations omitted) ; *Savage v. Mills, Admr'x, supra,* at 208-209.

> "Contributory negligence is the doing of, or omitting to do, some act or thing which a reasonably careful and prudent person would not have done or omitted to do under the circumstances, and which, concurring and cooperating with the negligent act of defendant, thereby becomes the real, efficient and proximate cause of the injury." *Miller v. Michalek,* 13 Md. App. 16, 19, quoting 2 Blashfield, *Automobile Law and Practice,* 3rd ed. § 101.6, p. 20.

As contributory negligence is an affirmative defense, the obligation of showing it *prima facie* was on appellant. Within the definition, appellant had to show not only that Carter was negligent, but that the negligence contributed to the accident—by concurring and cooperating

---

6. Now Art. 66½, § 12-201. See note 5, *supra.*

with the negligent act of Rosiak it became thereby the real, efficient and proximate cause of the injury.[7] "Like primary negligence, contributory negligence is relative and not absolute, and being relative, necessarily depends on the particular circumstances of each case." *Miller v. Michalek, supra,* at 19.

On the particular circumstances of this case we think it clear that the evidence was not legally sufficient with respect to the contributory negligence of Carter to submit the issue to the jury. Even if Carter was negligent by failing to turn on his car lights because a reasonably careful and prudent person would not have omitted to turn them on under the circumstances, appellant still had to show that this negligence, concurring and co-operating with the acts of Rosiak in proceeding into the intersection without stopping and yielding the right of way, was the real, efficient and proximate cause of Rosiak's cab striking Carter's car amidships. We have no difficulty in determining that reasonable minds could not differ in concluding that the evidence did not so show. It was not that Rosiak stopped and then proceeded into the intersection because he was unable to see Carter's car approaching without lights. Had such been the circumstance, the jury may properly have found Carter's omission was negligence contributing to the injury. On the contrary, the visibility of Carter's car *vel non* played no part in the collision. Whether Rosiak could or could not have seen the Carter car approaching was immaterial on the facts here, because it is undisputed that he violated his absolute duty to stop and to yield the right of way. He proceeded into the intersection, not because he may not have been able to see Carter's approaching car, but because when he applied the brakes his "vehicle just kept on going." In these circumstances the collision would have occurred whether Carter's car was seen by Rosiak

7. Appellant does not claim that Carter was guilty of contributory negligence as a matter of law and it is plain that he was not. See *Miller v. Michalek, supra,* at 19-20; *Mazur v. Stedding,* 10 Md. App. 505, 271 A. 2d 381, at 506-508.

or not and whether it was possible to see it or not. Therefore, that Carter's car was being driven without lights did not concur and cooperate with Rosiak's negligent act (Rosiak's negligence as the primary cause of the injury not being an issue before us) so as to become a contributory cause of the accident. We hold the lower court did not err in directing the verdict as to the contributory negligence of Carter and that the instruction that it was appellant's negligence which caused the accident, implying necessarily that there was no evidence sufficient to show contributory negligence on Carter's part, was compelled by the evidence. See *Barwood, Inc. v. Georgi,* 253 Md. 29, 30-31.

## II

When the examination of Carter was completed appellant moved to strike his testimony. He gave as reasons: "[B]y his own admission he is not responsible for what he says when he is under stress such as at the time he attended the deposition and more particularly I believe it was obvious at the time. Therefore, until it can be ascertained when he is not under stress the testimony is not worthy of belief and further that the testimony presented by him on his behalf is so contradictory that it has no probative force * * *." The court denied the motion. Appellant was referring to Carter's explanation why he stated when deposed that his car lights were not on, set out *supra.* Appellant quotes in his brief a further statement by Carter in testifying: "Look, I stated a minute ago under questioning like this I get awfully upset and I cannot keep my line of thought * * *." We complete the statement from the transcript: "* * * and I don't understand what you mean about my memory. If I can remember, I remember. If I can tell you, I will tell you."[8] Whether to receive Carter's testimony was in

8. He was being cross-examined as to medication before the accident, specifically the number of pills he was then taking. He said he could not remember, "You would have to ask the doctor." Pressed on whether his memory was better when his deposition was taken he made the above statement.

the sound discretion of the trial court. Prior inconsistent statements are to be distinguished from contradictory statements at the trial which render the evidence so unreliable on its face as to be without any probative value under the rationale of *Kucharczyk v. State,* 235 Md. 334. There was no material contradiction in Carter's testimony during the trial. The credibility of the witness in the face of the prior conflicting statements was a task for the jury rather than the trial tribunal. *Wilson v. State,* 261 Md. 551, 558.

In so far as the contention goes to the competency of Carter to testify, this was a matter in the discretion of the trial court. It had the opportunity to observe Carter on the stand and had knowledge of the explanations given by him. We cannot say that the receipt of his testimony was an abuse of judicial discretion. See *Horsey v. State,* 225 Md. 80, 82; *Weeks v. State,* 126 Md. 223, 227-228. We hold there was no error in the denial of the motion to strike.

## III

Dr. Leonard Rothstein, a physician specializing in psychiatry, testified on behalf of appellees.[9] When the examination of him was completed appellant moved to strike all of his testimony and have the jury instructed to disregard it. He gave as reasons: "I believe, sir, in this particular case the medical testimony has not been adequately or causally connected to the events which have occurred as it relates to a psychiatric condition." The motion was denied.

---

**9.** He gave his qualifications: "I am a physician specializing in psychiatry and I have had fifteen years of practice and experience. Twenty years of training and experience in psychiatry. I am certified as a psychiatrist specialist by the American Board of Psychiatry and Neurology. I am a Fellow of the American Psychiatric Association. I am an instructor in psychiatry at Johns Hopkins Medical School. I am formerly Director of the Baltimore County Division of Mental Health and the Department of Health, and am presently consultant to the Baltimore County Division of Social Services and the Children's Aid and Family Service Society."

Appellant pursues the point on appeal.[10]

The test for causal connection between the emotional disturbances of Carter as testified to by Dr. Rothstein and the accident is as stated in *Ager v. Baltimore Transit Company,* 213 Md. 414, 421 and quoted in *Montgomery Ward v. Cooper,* 248 Md. 536, 542:

> "Maryland cases, in accord with these well-recognized and established principles are all consistent in rejecting the proposition that the jury may form a judgment or conclusion on the basis of testimony which admits of mere possibilities and have stated in various cases that the test to be applied, whether the question involved is the existence of an injury or its cause, is reasonable probability or reasonable certainty. [Citing many prior Maryland cases]."

As pointed out in *Hughes v. Carter,* 236 Md. 484, 486, citing *Charlton Bros. v. Garrettson,* 188 Md. 85, 94, although the law requires proof of probable, not merely possible facts, including causal relations, "* * * sequence of events, plus proof of possible causal relations, may amount to proof of probable causal relations, in the absence of evidence of any other equally probable cause." See *Walters v. Smith,* 222 Md. 62.

Dr. Rothstein testified that Carter had a personality pattern that was vulnerable to emotional breakdown under stress. He concluded:

> "[A]nd it was further my impression that the accident-injury in which he was involved in in February was such a stress for him and that was followed by a several month period of aggravation of his anxiety and his depressive

---

10. In appellant's brief he states: "The pleadings in this case are void of any claim for aggravation of a pre-existing emotional condition * * *." This was not presented below in support of the motion. In any event the declaration included: "he was caused to suffer shock to his nerves and nervous system and was further caused to be confined to his home for sometime under treatment of physicians, surgeons and psychiatrists * * *."

symptoms, and that the aggravation was diagnosable as a post-traumatic neurotic syndrome."

When asked to put the above statement in lay terms, Dr. Rothstein spoke of Carter's long term personality pattern and disturbed emotional functioning. The Doctor explained that some of the disturbance was caused by childhood losses and earlier traumatic experiences like his military combat experience, but went on to add:

"That is at the basic level, but added on top of that was a more acute and more severe level of breakdown in his functioning which was brought about by the accident-injury experience."

We think, applying the test, that Dr. Rothstein's testimony was sufficient to show a causal connection between Carter's "emotional difficulties" and the accident. *Wilhelm v. State Traffic Commission,* 230 Md. 91 is not apposite. There the court was careful to point out that the physicians had not "testified that the accident caused, produced or precipitated any emotional involvement, neurosis or other psychological disorder in the appellant." At 98. Nor does *Kujawa v. Baltimore Transit Co.,* 224 Md. 195 support appellant's contention. In *Kujawa* the Court held that it was not improper to exclude testimony relating to the causal connection between the accident and mental condition where the witness said he could not "be definite about it at all", explaining "there are so many causes for general nervousness that it is very hard to state at this later stage just how much the accident had to do with the woman's condition." At 202. We hold the trial court did not err in denying the motion to strike Dr. Rothstein's testimony.

## IV

During cross-examination of Carter appellant read portions of Carter's deposition to impeach him by proof of prior inconsistent statements. The portions of the de-

position read concerned the purpose of Carter's visit to a Dr. Silberstein and whether or not his car lights were on as discussed above. As we have set out, appellant subsequently offered the portions of the deposition in evidence as part of its case, not then reading them into the record because they had been previously read. After the close of the evidence offered by appellant there was a discussion in chambers. The transcript reads:

"THE COURT: Before reconvening in open court the defendant wishes to take exception to the Court's ruling that in rebuttal the plaintiff may read portions of the plaintiff's deposition which pertains to portions of the same deposition introduced by the defendant at the conclusion of his part of. the case."

The court then specified the portions of the deposition which appellees would be permitted to read into the record. Appellant explained his objection: "The adverse party must request that the party be required to read parts of the deposition relevant to those read in order to continue the context or must suggest to the trial court that these parts be read, and I submit that this is done at the time they are referred to when a witness is on the stand and was done in this particular case." Appellees noted that after the cross-examination of Carter they requested the court to allow them to introduce the additional excerpts (those above designated by the court). The court remarked: "The record shows what was done." Appellees read the designated portions of the deposition into evidence. Appellant contends that the trial court erred in permitting this.

Rule 413 a 4 provides:

"If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce all of it which is relevant to the part introduced, and any other party may introduce any other parts in accordance with this rule."

Appellant claims that appellees did not precisely adhere to the requirements of the Rule, urging that their introduction of the additional excerpts was not timely. He does not assert that the additional excerpts were not relevant to the parts introduced and it is patent that they were. We cannot say that the procedure here followed did such violence to the Rule as to render the admission of the excerpts an abuse of the discretion of the lower court. Appellant relies on *Bauman v. Woodfield, supra,* quoting the Court's remarks about the Rule at 220-221:

> "There is no doubt that under Rule 413 a 4 the party reading the adverse party's deposition may be required by the adverse party to read all relevant parts of the deposition to continue the context. * * * The adverse party must request that the party be required to read parts relevant to those read in order to continue the context or must suggest to the trial court those parts to be read." (citations omitted)

It observed that the plaintiffs in that case did neither. But it found no need to decide whether or not the lower court committed error in not permitting counsel for the plaintiffs to read plaintiffs' depositions in rebuttal.[11] Here appellees requested to the trial court the parts of the deposition to be read. We see nothing in *Bauman* which would prohibit the introduction of the excerpts here challenged. We hold the lower court did not err in admitting them.

## V

The court denied appellant's request for the following instruction:

---

11. One of the plaintiffs, without objection, testified in his own behalf in rebuttal. "Thus plaintiffs had full opportunity to elicit any testimony to explain, modify or clarify a claimed admission, contradiction or inconsistency in the testimony introduced from the prior depositions. Under these circumstances the error, if any, was harmless." *Bauman* at 221.

> "The Court instructs the jury that if a party to a suit is able to produce a witness who may have knowledge of the facts and fails to call that witness or explain the witness' absence, then there is a presumption that the party's testimony would be unfavorable."

The court also refused to permit appellant's counsel to argue to the jury that appellees' failure to call certain witnesses raised a presumption that the absent witness' testimony would be unfavorable to appellees. The request as to instruction and argument related to a Dr. Abrams and a Dr. Silberstein. In opening statement to the jury appellees' counsel said Carter had been referred for treatment to "a Dr. Silberstein who is an orthopedic surgeon." He also said that Carter had been treated by a Dr. Abrams. He indicated what each of the doctor's testimony would be. Neither was called to testify by appellees.

Appellant relies on *Critzer v. Shegogue,* 236 Md. 411. The holding in *Critzer* was that the giving of an instruction in substance the same as the instruction here requested was prejudicial error in the circumstances of the case. The court stated at 420 the general rule as set out in 20 Am. Jur., *Evidence,* § 156:

> "It is a well-established rule that where relevant evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and he fails to do so, without satisfactory explanation, the jury may draw an inference that such evidence would be unfavorable to him. This rule is uniformly applied by the courts and is an integral part of our jurisprudence."

But the court added, at 421:

> "To the general rule, as stated above, there are qualifications and limitations. * * * However, we do not deem it desirable to attempt to

set forth any precise rule with all of the exceptions thereto, for, in passing upon such exceptions, it is often necessary for the trial judge to take into account all of the attendant facts and circumstances bearing upon the situation presented before him. * * * However, when it is shown why the witness was not called upon to testify and the reasons for not calling him are reasonable and proper, no inference that his testimony would be unfavorable is permitted." (citations omitted)

For the record the lower court explained its denial of the requests:

"We spent some time in chambers yesterday afternoon with respect to argument as to the plaintiff's failure to call Dr. Abrams and Dr. Silberstein, and I instructed counsel for the defendant after indicating I was not going to give the requested prayer on failure to call a witness, then I would not permit argument as to Dr. Abrams or Dr. Silberstein and the rule which is applicable to failure to call a witness, has many exceptions and under all of the circumstances in this case I felt it would not be in the best interest of justice to permit argument on that score.

This goes back to what happened at the outset when after the jury had been instructed [12] and the trial begun we got into the question of the motion Ne Re to the last supplemental answers to interrogatories which the plaintiff had filed and that came to the Court's attention for the first time then and the indication was that each party had proceeded on the theory that the other had withdrawn from his position.

The defendant assumed that since the plaintiff

12. This apparently refers to the court informing the jury prior to opening statements of counsel the procedure which would be followed in the conduct of the trial.

hadn't insisted on a hearing that he was not insisting on his answers, and the plaintiff took the position that since the defendant had not insisted on a hearing prior to trial that he was withdrawing his motion Ne Re. As I indicated at the time I thought it was a standoff and while we were attempting to work out how to handle that problem the plaintiff withdrew his—or in effect withdrew his supplemental answers. This was after opening statement and now plaintiff says that the reason he didn't call Dr. Abrams and Dr. Silberstein is because he wouldn't be able under the posture of the interrogatories to go into the more important matters there and the more we discussed it the more involved it became and for that reason I made the ruling that I did as to Dr. Abrams and Dr. Silberstein."

The trial judge here read the reports of Dr. Abrams and Dr. Silberstein and it is patent that he took into account all of the attendant facts and circumstances bearing upon the situation presented before him. We cannot say on the particular facts existent and the surrounding circumstances that there was an abuse of judicial discretion in the denial of the requests. We observe further that the propriety of the form of the instruction requested is suspect. It was, as was the instruction in *Critzer*, couched in very general terms. The Court in *Critzer*, at 423, said that the general terms used "were such that they tended to mislead the jury." The requested instruction read, as did the instruction in *Critzer*, that if a party is able to produce a witness who "may" have knowledge of the facts, etc., the "presumption" arises. The Court asked, "Does this mean that a party must explain his not calling every witness who 'might' in the minds of the jury have knowledge of relevant facts? We have found no case or authority that attributes such a wide scope to the rule. Also, there is no intimation in

the instruction as to the effect of the 'presumption', such as whether it is a substitute for substantive proof of any fact essential to the case of the party invoking the rule."

Therefore "[W]ithout * * * attempting to lay down a hard-and-fast, precise rule to cover the myriad of conceptual ramifications resulting from a failure to produce evidence," id. at 423, we hold that under the circumstances prevailing herein it was not prejudicial error to refuse to grant the instruction requested or to permit argument to the jury to like effect.

*Judgment affirmed; costs to be paid by appellant.*