## JOHN VERNON KRAFT *v.* AARON MARVIN FREEDMAN ET UX.

[No. 464, September Term, 1971.]

*Decided April 20, 1972.*

The cause was argued before THOMPSON, CARTER and GILBERT, JJ.

*Daniel O'C. Tracy, Jr.,* for appellant.

*Alexander Stark,* with whom was *William S. Little* on the brief, for appellees.

CARTER, J., delivered the opinion of the Court.

The appellees Aaron Marvin Freedman and Betty Freedman, his wife, recovered judgments against the appellant John Vernon Kraft on account of personal injuries sustained in a motor vehicle collision. The action was tried before a jury in the Circuit Court for Baltimore County solely on the issue of damages after the appellant had conceded his liability. The declaration contained three counts. Count one asserted Mrs. Freedman's individual claim, count two Mr. Freedman's individual claim, and count three the joint claim of Mr. and Mrs. Freedman for loss of consortium. The jury returned a verdict in favor of Mrs. Freedman individually for $5,000, in favor of Mr. Freedman individually for $500, and in favor of the joint claim for $2,000. The appellant ap-

pealed from these judgments contending that the court's instructions were in error in failing to advise the jury that there was no legally sufficient evidence to establish that Mrs. Freedman's pre-existing ileitis was aggravated by the accident.

## FACTS

The collision occurred on the Baltimore Beltway on January 9, 1969. The car operated by the appellee (Mrs. Freedman) in which Mr. Freedman was a passenger was struck by a car operated by the appellant (Mr. Kraft). The Freedman car was stopped at the time because of a back-up of traffic. Mr. Kraft was unable to bring his car under sufficient control to avoid striking the Freedman car as he approached it from the rear. A third party who was an eyewitness to the collision testified that the two cars "hit pretty hard." The Freedman car was tilted as a result of the collision thereby causing Mrs. Freedman to strike her head against the door frame and Mr. Freedman to catch his foot under the brake pedal. When they arrived home, Mr. Freedman called the office of Dr. Daniel Bakal, their family physician, and reported their injuries.

The testimony of Mrs. Freedman showed that in May 1968, she developed ileitis (inflammation of the small intestine) and underwent surgery in an attempt to correct the condition. In December 1968, she was practically cured of the disease through medication administered by Dr. Bakal. After the accident in January 1969, the ileitis symptoms recurred. A specialist prescribed an additional drug and brought her condition under control within about two months after he started treatment in April 1970. Her neck was injured as a result of the accident and has continued to cause her pain and discomfort since that time. The injuries which she sustained in the accident have limited her activities requiring physical exertion such as gardening and housework as well as the social activities of her and her husband. The testimony of

Mr. Freedman substantially corroborated that of his wife concerning her injuries. He also testified that his leg was injured in the accident. Mrs. Freedman reported for work the next day and Mr. Freedman returned within a few days after the accident.

Dr. Daniel Bakal was called as a witness for the appellees (Freedmans). His testimony showed that he had treated Mrs. Freedman for her ileitis after her operation in May 1968. Her first consultation with him after the accident was on January 24, 1969 (15 days later), which was for the dual purpose of discussing the accident and having a routine check-up of her ileitis. His examination at that time showed that "she was doing well" so far as her ileitis condition was concerned. He found a tenderness of the neck muscles which he attributed to the accident. In May 1969, by prearrangement, he conducted another routine check-up of Mrs. Freedman's ileitis including X-rays of the area affected. The Doctor stated that the treatment of the condition involved the use of a variety of drugs and the taking of blood counts and X-rays from time to time to ascertain the existence of the inflammation. Dr. Bakal further testified that he was unable to determine with reasonable medical certainty whether the recurrence of the ileitis was caused by the accident. In this connection he pointed out that the disease was "cyclic" (occurred in cycles) with "ups and downs", and therefore that it was difficult to determine whether the recurrence was a natural incident of the ileitis disease or was caused by the accident.

Dr. Jesse Borden, an orthopedic surgeon, was a witness for the appellees (Freedmans). He testified that, in his opinion, based on reasonable medical certainty, Mrs. Freedman had sustained a 15 to 20 per cent permanent disability of her neck as a result of the accident. Dr. Calvin Hornstein, a chiropractic physician, also testified for the appellees. He stated that Mrs. Freedman had sustained a chronic strain of her neck as a result of the accident and that he had treated her for several weeks

in the fall of 1969 during which time her condition materially improved. He released her in October 1969.

Dr. Thomas Hunt, an orthopedic surgeon, testified for the appellant. He stated that he had examined Mrs. Freedman on October 20, 1970, and had failed to find any organic or observable basis to indicate that she had sustained an injury to her neck.

## REQUIREMENTS OF MD. RULE 554 d and e

At the time of the exception the court had instructed the jury as follows in respect to the flare-up of the ileitis:

> "* * * There is evidence that there was a flare-up shortly after the accident, but it is up to you to determine *from the medical evidence* as to whether or not that flare-up was one which came in the normal, ordinary course of the disability which she had pre-existing this accident or whether this flare-up was caused by the accident. If it was caused by the accident she is entitled to be compensated for it; if it would have come about in any event, then obviously she is not entitled to be compensated for it." (emphasis supplied).

The verbal exception taken by the appellant to the court's instructions before the jury retired was denied. The exception was as follows:

> "I just have one exception, of the court's failure to instruct the jury to disregard all testimony on the ileitis condition, since the only evidence on that was the testimony of Dr. Bakal, who, in response to the question of whether he had a professional opinion based on his examination and history with reasonable medical certainty whether or not the ileitis condition was affected by the accident, stated that he could not give such an opinion."

The appellees challenge the adequacy of this exception to present to this Court for review the question of the legal sufficiency of the evidence to establish a causal connection between the accident and the recurrence of the ileitis.

Md. Rule 554 d provides that "if a party has an objection to any portion of any instruction given, or to any omission therefrom, or to the failure to give any instruction, he shall before the jury retires to consider its verdict make such an objection stating distinctly the portion, or omission, or failure to instruct to which he objects and the ground of his objection." Section e of the Rule provides that "upon appeal a party in assigning error in the instructions, shall be restricted to (1) the particular portion of the instructions given or the particular omission therefrom or the particular failure to instruct distinctly objected to before the jury retired and (2) the grounds of objection distinctly stated at the time, and no other errors or assignments of error in the instructions shall be considered by the appellate court."

In *Kowalewski v. Carter*, 11 Md. App. 182, the trial judge instructed the jury that a state trooper who had been a witness in the case "by his own experience and work, has to be given some credence." In excepting to this portion of the instruction, counsel said, "The Defendant excepts to the court's statement, * * * that the trooper, by virtue of his experience, must be given some credence." In ruling that the exception preserved the objection for appellate review even though it failed to state "the ground of his objection" as required by Md. Rule 554 d, this Court said at page 192:

"* * * The Rule does provide that 'the ground of his objection' shall be stated, but it was perfectly evident, particularly in the light of the other parts of the charge regarding credibility, that the ground was that the credibility of the trooper was solely for the jury and that to tell them that he 'has to be given some credence'

was wrong. It is inconceivable that the court
and opposing counsel did not comprehend that
this was the ground of the exception. We shall
consider the contention on its merits."

The instructions of the court in the instant case to
which the appellant's exception related charged the jury
to "determine from the medical evidence" as to whether
the accident caused the flare-up of the ileitis. Applying
the rationale in *Kowalewski, supra* to the wording em-
ployed in the exception and in the court's instruction to
which it relates, it is clear that the appellant intended
to object to the failure of the trial court to instruct the
jury that in assessing damages, they should disregard all
testimony concerning a flare-up of Mrs. Freedman's
ileitis. It is equally clear that the ground of his objec-
tion was that there was no legally sufficient evidence to
establish that the flare-up was caused by the accident.
We have no doubt that both the trial judge and counsel
for the appellees clearly understood the exception in this
sense.[1] The objection to the instructions is therefore
properly before this Court for review in compliance with
the requirements of Md. Rule 554 d and e.

### CAUSAL CONNECTION

In speaking of the type of physical condition that re-
quires expert medical testimony in order to legally es-
tablish a causal connection between the injury and the
subsequent condition, the Court of Appeals in *Wilhelm
v. State Traffic Commission,* 230 Md. 91, speaking through
Judge [later Chief Judge] Prescott, said at page 99-100:

"There are, unquestionably, many occasions
where the causal connection between a defen-
dant's negligence and a disability claimed by a

---

1. In *State v. Wooleyhan Transport Company,* 192 Md. 686, the
Court of Appeals held that one of the primary purposes to be
served by the predecessor to Md. Rule 554 was to give the trial
judge an opportunity before the jury retired to amend or supple-
ment his charge if he deemed an amendment necessary. To serve
this purpose, it would of course be necessary that the trial judge
clearly understand the nature of the exception. (See also *Barone
v. Winebrenner,* 189 Md. 142.)

plaintiff does not need to be established by expert testimony. Particularly is this true when the disability develops coincidentally with, or within a reasonable time after, the negligent act, or where the causal connection is clearly apparent from the illness itself and the circumstances surrounding it, or where the cause of the injury relates to matters of common experience, knowledge, or observation of laymen. Cf. 65 C.J.S., *Negligence,* § 244, p. 1096; *United Laundries Co. v. Bradford,* 133 Md. 363, 105 A. 303; *Wash., B. & A. R. Co. v. Cross,* 142 Md. 500, 121 A. 374; *Cluster v. Upton,* 165 Md. 566, 168 A. 882. However, where the cause of an injury claimed to have resulted from a negligent act is a complicated medical question involving fact finding which properly falls within the province of medical experts (especially when the symptoms of the injury are purely subjective in nature, or where disability does not develop until some time after the negligent act), proof of the cause must be made by such witnesses. * * *"

See also cases therein cited from other jurisdictions and *Craig v. Chenoweth,* 232 Md. 397, 400-401.

Applying *Wilhelm, supra* to the undisputed facts shown by the testimony of Dr. Bakal concerning the nature of the disease of ileitis and the complicated medical question involved in determining whether its recurrence was brought about as a natural incident of the disease or from the accident, we have no difficulty in concluding that expert medical testimony is required, under the accepted rule, in order to establish the causal connection, if any, between the accident and the recurrence in the instant case. We so hold.[2]

2. In so concluding, we have fully considered the cases primarily relied upon by appellees—*Walters v. Smith,* 222 Md. 62; *Montgomery Ward & Co. v. Cooper,* 248 Md. 536; and *Ranson v. Funkhouser,* 258 Md. 346: we do not find them apposite to the facts of the present case.

## LEGAL SUFFICIENCY OF EXPERT'S TESTIMONY

The only expert medical testimony of a causal connection between the recurrence of Mrs. Fredman's ileitis and the accident was that of Dr. Bakal who was called as a witness for the appellees. As heretofore pointed out, he testified on direct examination that he was unable to give an opinion based on reasonable medical certainty as to whether the accident had caused the recurrence of the pre-existing condition. When this testimony developed, counsel for the appellees claimed surprise and asked leave of court to cross-examine the witness. On cross-examination Dr. Bakal admitted that prior to trial he had made a written report in which he had stated it was his "impression" that as a result of the accident Mrs. Freedman had developed a persistent muscle injury of her neck and in addition had had a flare-up of previously acquired ileitis. There was no explanation by Dr. Bakal as to what he meant by this written statement or why he had given it. In this situation the jury had before it the sworn testimony of Dr. Bakal that he was unable to express an *opinion* as to whether the flare-up of the ileitis resulted from the accident and also his acknowledgment that he had given a prior statement that it was his *impression* that the flare-up of the condition was the result of the accident. Even if we were to assume for the purposes of this opinion that the terms "impression" and "opinion" were intended by Dr. Bakal to have the same general meaning, the prior written statement was in effect self-contradictory of his testimony.

The Court of Appeals has spoken clearly on the probative value of a self-contradictory statement. In *West v. Belle Isle Cab Company, Inc.* 203 Md. 244 (1953), Judge [Now Chief Judge] Hammond, speaking for the Court, said at page 253:

> "* * * [T]he general rule is that prior statements which are produced at the trial to impeach a witness are not probative evidence but may be used only for impeachment. *Foble v.*

*Knefely,* 176 Md. 474; *State v. C. J. Benson & Co.,* 129 Md. 693, 698; *Baltimore Transit Co. v. Castranda, supra. Wigmore on Evidence,* 3rd Ed., Vol. III, Section 1018, states the rule as follows: 'It is universally maintained by the Courts that Prior Self-Contradictions are not to be treated as having any *substantive or independent testimonial value.'* Professor Wigmore does not agree that this is a sound conclusion; nevertheless, this Court has joined in the universality of its acceptance."

See also *Sun Cab Company, Inc. v. Cusick,* 209 Md. 354, 360; *Green v. State,* 243 Md. 154, 158. Applying the holding in *West, supra* to the circumstances in this case, we hold that the prior self-contradictory statement of Dr. Bakal had no "substantive or independent testimonial value." Therefore the only expert medical evidence having substantive value that was adduced before the jury was the sworn testimony of Dr. Bakal to the effect that he was unable to give an opinion as to whether there was a causal connection between the accident and the recurrence of the pre-existing ileitis. We therefore conclude as a matter of law that the evidence adduced was legally insufficient to permit the jury to find that the accident caused the recurrence of the ileitis. Under these circumstances, the trial court was in error in submitting the question of causal connection to the jury over the objection of the appellant.

There is no legal means whereby it can be determined to what extent, if at all, the jury improperly allowed damages for the recurrence of the ileitis condition in arriving at their verdicts in counts one and three. There was also competent evidence before the jury of other injuries incurred by Mrs. Freedman as a result of the accident. However, we are likewise unable to ascertain the amount, if any, that the jury apportioned for these injuries. The judgments rendered in counts one and three will therefore be reversed and a new trial awarded for the limited

purpose of having the damages that are legally allowable assessed anew under these counts.

> *Judgments affirmed except as to damages under Counts One and Three.*
>
> *Judgments as to damages under Counts One and Three reversed and case remanded for a new trial thereon; costs to be paid by appellees.*