WILHELM ET VIR *v.* STATE OF MARYLAND TRAFFIC SAFETY COMMISSION ET AL., ETC.

[No. 67, September Term, 1962.]

94

*Decided November 21, 1962.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*Fred Kolodner,* with whom were *Irving B. Klitzner, Hyman Ginsberg* and *Ginsberg & Ginsberg* on the brief, for the appellants.

*William B. Somerville,* with whom were *J. Kemp Bartlett, III, Bartlett & Hicks,* and *Smith, Somerville & Case* on the brief, for the appellees.

PRESCOTT, J., delivered the opinion of the Court.

Alleging that certain errors committed by the trial court reduced the amounts of the jury verdicts obtained by them, the appellants, a husband and wife who had obtained judgments against the appellee for the negligent injury of the wife, appeal here.

The questions raised will be considered under five headings: (1) Did the trial court err in refusing to permit a psychiatrist, who was not employed to treat or to prescribe treatment for the wife but for the purpose of examination only, to relate the history given him by the wife?; (2) Did the trial court err in instructing the jury that there was no legally sufficient evidence to show that certain of the wife's alleged complaints resulted from the accident?; (3) Was the trial court in error when it failed to instruct the jury specifically in re-

gard to the loss of consortium by the husband?; (4) Did the court commit prejudicial error in refusing to instruct the jury that, in arriving at the loss of the wife's services by the husband, they could consider "past, present and future" loss of said services?; and (5) Did the court err in instructing the jury there was no legally sufficient evidence to show disfigurement by loss of pigmentation in the skin?

On May 2, 1959, at about 9:15 A.M., the appellant, Grace Wilhelm, was sitting on the front seat of her husband's Cadillac, which was parked on the north side of Chesterfield Avenue in Baltimore City. The appellee was operating another automobile, which was approaching her from the rear. Because of the presence of some small children and a dog, he drove near the vehicles parked to his right. He applied his brakes and apparently veered slightly to his right thereby striking the left front fender of a Buick automobile, which was parked on the same side of the street as, and to the rear of, the Cadillac, and the left rear fender of the Cadillac.

Following the collision, Mrs. Wilhelm was taken to the Union Memorial Hospital, where X-rays were taken. This hospital report was read into evidence by the appellants' attorney and showed:

> "Patient was involved in auto accident. Was sitting in car. Was hit from behind. Her neck jerked backwards. No nausea, vomiting, no numbness of extremities. Neck very painful in rotation. Palpation of cervical spine not contributory. Sounds to be muscular. Impression: Spasm of cervical spine."

She remained in the hospital for approximately an hour and a half, and was given some prescriptions to have filled. Thereafter, she visited many doctors (including a dermatologist, orthopedic surgeons, three gynecologists, and a psychiatrist) on numerous occasions. It would unduly prolong this opinion and accomplish no desirable purpose to detail the numerous visits to the doctors and their findings. It will suffice to outline some of the doctors' conclusions and her treatments and complaints, supplementing facts in the consideration of the points raised when necessary.

Her first orthopedic surgeon diagnosed her case as a severe whiplash sprain of the neck and of the back. He ordered her to enter the hospital, where, at the doctor's direction, traction was applied and she was ordered to wear a supportive corset and neck collar. She complained of severe pains in her neck and back. After a period of time, her doctors felt that she was better, but she continued to complain of pains and other ailments, which the doctors could not relate to the accident.

## I

Doctor Rothstein, a psychiatrist, was called to the witness stand by the appellants. The appellee, Paul Edward Burke, objected to his reciting the history he had obtained from the wife when he examined her. The doctor testified that he did not treat her, and there was no attempt made to show that he was employed to recommend treatment of her by her other physicians. Cf. *Yellow Cab Co. v. Hicks,* 224 Md. 563, 168 A. 2d 501. This Court has consistently and repeatedly recognized the principle that a non-treating physician may not relate the history given to him by a litigant. *Parker v. State,* 189 Md. 244, 55 A. 2d 784; *Francies v. De Baugh,* 194 Md. 448, 71 A. 2d 455; *Wolfinger v. Frey,* 223 Md. 184, 162 A. 2d 745. And in *Connor v. State,* 225 Md. 543, 171 A. 2d 699, this Court, in an opinion by Judge Horney, flatly held that this rule applied to psychiatrists. In addition, appellants admit that Dr. Rothstein would have repeated "the same history which was given by Dr. Filtzer and Dr. Jones [appellants' witnesses who had already testified]"; hence, if the doctor's opinion were desired, there is no apparent reason for not having asked him a hypothetical question. There was no error here.

## II

The trial judge instructed the jury that there was no legally sufficient evidence to show (a) that the wife's alleged "psychiatric involvement, psychosomatic factors, or mental state," or (b) that abdominal or back pains associated with her menses, were the result of the accident of May 2, 1959; consequently the jury was not to consider these factors in estimating damages.

The evidence with reference to (a) was to the following effect: that after treatment following the accident on May 2nd, the patient seemed to be responding well and recovering from the effects of the accident. On her visits to Dr. Filtzer (her main physician) in August and September she told the doctor that she was "considerably better," and his examinations confirmed her statements. She was not nearly so apprehensive as had been noted previously, and, as was the case in all of his examinations, the neurological examination was negative. On October 1st, she stated to the doctor that she had no difficulty with her neck, and only had pain in her back when she removed her corset. His examination disclosed, with the exception of "some mild residual symptoms in the back when going without her corset," a fairly normal person. She returned on October 29th and complained of difficulty with her low back associated with her menstrual period. She was again seen by the doctor on November 11th and 16th of 1959, and on February 1, 1960. In relating what his examination of February 1st disclosed, the doctor, for the first time, said that in his opinion "her symptoms were obscured by a deep-seated psychological overlay," without stating when he first came to that conclusion.

Dr. Jones saw the patient on two occasions, November 24, 1959, and on September 20, 1960. He testified, *inter alia,* that in his opinion "there is a very profound psychosomatic factor that * * * serves to aggravate or accentuate any true organic cause that this young lady may have for her persistent and prolonged back symptoms," and that pain produced by such a factor, although imaginary, is disabling.

A "psychological overlay" and a "psychosomatic factor," as used here (when stripped of their elaborate "foliage" of technical medical language) mean about one and the same thing; namely that, due to emotional disturbances, the patient's symptoms, on an unconscious basis, are grossly exaggerated instead of being prompted by actual organic ailments alone. It must be noted that neither of the doctors testified that the accident caused, produced or precipitated any emotional involvement, neurosis or other psychological disorder in the appellant.

With reference to (b), the abdominal and back pains that the wife associated with her menstrual periods, they seem to

have been first reported to Dr. Filtzer on October 29, 1959, and the complaint related to the menstrual period that occurred about the middle of that month. The doctor examined her quite a number of times thereafter. He "could not explain the flare up in back pains associated with her menstrual period"; he could not "correlate [the physical findings] to her menstrual period"; the relationship of her back difficulty with her menstrual period was "something [he] had never seen or heard of before"; and he did not know the cause of her continued abdominal complaints. He referred her to a gynecologist.

She saw three of them. They did not testify, but the appellants brought out the conclusions of two of them. Drs. Weinberg and Galvin, when Dr. Filtzer was testifying. Dr. Weinberg was unable to explain the association of the wife's back difficulty with her menstrual cycle. Dr. Galvin could find nothing abnormal in his examinations, and he could not account for her back and abdominal pains associated with her menstrual periods.

Dr. Jones, the other orthopedic specialist called by the appellants, testified that he did not believe there could be, or was, any connection between the abdominal pains complained of and the accident.

Upon the above facts, the appellants contend that the question of causal connection between the accident and the wife's disabilities named under this heading should have been submitted to the jury. The appellee, on the other hand, claims that said disabilities were of such a complex nature that the causes thereof did not relate to matters of common knowledge among laymen, and, therefore, called for expert testimony upon the question of causal connection.

There are, unquestionably, many occasions where the causal connection between a defendant's negligence and a disability claimed by a plaintiff does not need to be established by expert testimony. Particularly is this true when the disability develops coincidentally with, or within a reasonable time after, the negligent act, or where the causal connection is clearly apparent from the illness itself and the circumstances surrounding it, or where the cause of the injury relates to matters of common experience, knowledge, or observation of laymen. Cf. 65 C.J.S.,

*Negligence,* § 244, p. 1096; *United Laundries Co. v. Bradford,* 133 Md. 363, 105 A. 303; *Wash., B. & A. R. Co. v. Cross,* 142 Md. 500, 121 A. 374; *Cluster v. Upton,* 165 Md. 566, 168 A. 882. However, where the cause of an injury claimed to have resulted from a negligent act is a complicated medical question involving fact finding which properly falls within the province of medical experts (especially when the symptoms of the injury are purely subjective in nature, or where disability does not develop until some time after the negligent act), proof of the cause must be made by such witnesses. 65 C.J.S., *Negligence,* § 244, p. 1096; *McCrosson v. Phil. Rapid Transit Co.,* 129 A. 568 (Pa. 1925), (Lobar pneumonia developed 7 weeks after accident—no expert testimony to effect that accident "most probably" caused it. Recovery denied.); *Anderson v. Baxter,* 132 A. 358 (Pa., 1926), (Compensation case. Employee accidentally cut his hand, which became infected. 81 days later, he died of pneumonia. Claim disallowed for want of expert testimony as to causal connection); *Inter Ocean Oil Co. v. Marshall,* 26 P. 2d 399 (Okla.), (Miscarriage allegedly caused by exposure); *City of Pawhuska v. Crutchfield,* 8 P. 2d 685 (Okla.), (Prayer permitting recovery for permanent injuries based solely upon subjective symptoms held erroneous in the absence of expert testimony.) *Spivey v. Atteberry,* 238 P. 2d 814 (Okla., 1951), (No expert testimony showing that injuries resulted from dog 'bite. Recovery denied.); *Larson v. State Ind. Acc. Comm.,* 307 P. 2d 314 (Ore., 1956), (Compensation case. Held claimant must show by expert testimony causal connection between accident and alleged disability to his back developing sometime after accident.); *Cobb v. Baldwin,* 178 So. 743 (La.), (Where alleged injury appeared months after negligent act, "very strong testimony" was needed to connect injury with accident.). Cf. *Abend v. Sieber,* 161 Md. 645, 158 A. 63; *7 Wigmore, Evidence* (3rd Ed.), § 2090; *Jewel Tea Co. v. Blamble,* 227 Md. 1, 174 A. 2d 764.

In *Jewel,* a compensation case, Judge Sybert, for the Court said: "It has been held that reliance on lay testimony alone is not justified when the medical question involved is a complicated one, involving fact-finding which properly falls within the province of medical experts."

There can be little doubt, we think, that a question involving the causes of emotional disturbances in a person sufficient to evoke, subconsciously, grossly exaggerated symptoms is an intricate and complex one, peculiarly appropriate for science to answer. To allow a jury of laymen, unskilled in medical science, to attempt to answer such a question would permit the rankest kind of guesswork, speculation and conjecture. We hold that the trial court correctly refused to submit the question here involved to the jury.

What we have just said applies, with equal force, to the question of causal connection between the accident and abdominal and back pains associated with the wife's menses. This question, too, was a complicated one, presenting an involved and intricate medical inquiry, the solution of which was singularly suitable for determination by medical science. The symptoms here involved did not develop until several months after the accident, and, not only did no expert (nor did any lay witness except by implication) testify that the accident caused, or was in any way connected with, the complaints now under consideration, but the experts produced by the appellants testified either that they were unable to "correlate the physical findings to her menstrual period," or that there was no connection between "the abdominal pains complained of and the accident." Under these circumstances, it is unnecessary to labor the question further. We hold that the trial court was also correct in refusing to submit this question to the jury.

### III

This contention is not before us for review. There was no request for a specific instruction regarding loss of consortium; nor was objection made to the court's failure to include such an instruction in his charge to the jury. Maryland Rules 554 d and 885.

### IV

This question is a fairly close one. In instructing the jury regarding the elements that it might consider in estimating the husband's damages, the judge, after enumerating other elements, stated, "* * * you are also to consider * * * the loss of services he *has sustained* * * * by reason of his wife's in-

juries, and you are to allow him such damages as in your opinion will be a fair and just reward for the damages and losses he *has sustained.*" (Italics ours.) The husband excepted to this portion of the court's charge upon the ground that he was entitled to recover for the loss of his wife's services, "past, present and future." He contends that the instruction, as worded, prevented the jury from awarding him compensation for any loss of services subsequent to the trial.

There can be little doubt that the charge would have been clearer, and the trial judge would have been justified, had he informed the jury that the husband was entitled to recover for the past loss of his wife's services and those probably, or certainly, to occur in the future, as a result of the accident, but not for consequences which were speculative or conjectural. Cf. *Hussey v. Brown,* 64 Md. 426, 2 A. 729; *McDermott v. Severe,* 202 U. S. 600; 1 *Sedgwick, Damages* (9th Ed.), §§ 86, 86 c; *Adams v. Benson,* 208 Md. 261, 117 A. 2d 881. However, we have said that the trial court's instructions must be considered as a whole; that the charge need not comply with the technical rules of formal written prayers; that this Court will not be overly critical of the words used by the trial judge if the result is sufficient, *Lloyd v. Yellow Cab Co.,* 220 Md. 488, 154 A. 2d 906; and, even if an erroneous instruction were given, it did not constitute a ground for reversal in the absence of prejudice, *Connor v. State,* 225 Md. 543, 171 A. 2d 699.

When the charge is examined and considered as a whole, we fail to find prejudicial error, although, as indicated above, what the trial judge meant when he used the verb "has sustained" could have been made clearer. The court, when instructing in regard to the wife's damages, told the jury that in estimating the same it could consider her health and condition before the accident as compared with the present condition as a consequence of said accident, and whether her injuries were permanent in nature; also the physical and mental suffering to which she had been subjected by reason of her injuries; and also the physical activities engaged in by her prior to the accident as compared with the physical activities engaged in after the accident. This, very clearly, did not limit the wife's recovery to damages suffered by her prior to the trial, but per-

mitted the jury to determine whether or not her injuries were permanent. But, more importantly, there was little, if any, specific testimony relating to how far the wife would be incapacitated, as a result of the accident, from performing her usual and customary duties after the trial; and the jury's verdict was considerably in excess of his out-of-pocket expenditures resulting from the accident, which shows that the verdict included substantial damages for the loss of his wife's services.

## V

Mrs. Wilhelm testified that, when the automobile in which she was seated was struck by the vehicle operated by the appellee, she was thrown forward and her head hit the sun visor, causing a "big bruise," which did not disappear for some three or four months. She noticed that the skin of her face and her eyebrow turned white at the location of the bruise. She called this to Dr. Filtzer's attention on June 23, 1959 (Dr. Filtzer confirmed this fact, and he and Dr. Jones both confirmed the loss of pigmentation in the area). Mrs. Wilhelm further stated that she had had no "white condition" on her face prior to the accident, and there was no other "white pigment" on her face other than in the "area of the bruises."

Mrs. Wilhelm contends that this depigmentation was an injury for which she was entitled to be compensated, and the testimony above related was sufficient to show a strong *probability* that it resulted from the accident; hence the question of causal connection should have been submitted to the jury. The appellee counters by claiming that the submission of the question of causation to the jury would have invited conjecture and speculation; that the nature of this alleged injury was such that its cause had to be established by expert medical testimony, and none other would suffice.[1] We do not agree.

---

1. In Maryland, the test of the sufficiency of evidence to take the question of causal relationship to the jury is "reasonable probability," or "reasonable certainty." Ager v. Baltimore Transit Co., 213 Md. 414, 421, 132 A. 2d 469. Mrs. Wilhelm was sent to a skin specialist. His report was produced as a result of an interroga-

We think the question here involved comes within the category of the cases first mentioned under heading II. Where a woman, 30 years of age, who had never had any previous depigmentation of the skin of her face, is shown to have suffered a bruise to her face on May 2nd, and within a few weeks thereafter a depigmentation develops, which is reported to, and confirmed by, the doctor on June 23, and the loss of pigmentation is confined solely to the area of the lesion, common experience, knowledge and observation of laymen, we think, would permit a rational inference that the bruise had probably caused the loss of pigmentation, in the absence of evidence of any other equally probable cause. This, with the other evidence in the case, was all that was necessary to make out a *prima facie* case on the issue here being considered. Compare the authorities first cited under heading II above.

The Supreme Court of Rhode Island had a situation similar to the case at bar in *Valente v. Bourne Mills,* 75 A. 2d 191, a compensation case. There, a woman received a blow from a wooden and metal instrument on the nipple of her breast. She felt no particular pain, and, therefore, did not report the accident. However, in about two weeks she observed that the nipple was "a little hard, and that pus [was] coming off." She went to the doctor, who, after examination, told her she must go to the hospital immediately. She went, and, in a few day's time, the doctor removed her entire left breast. The trial justice ruled against the petition upon the ground that she had failed to produce direct medical testimony expressly establishing a

tory propounded by the appellee, but it was not offered into evidence by either side. However, appellee has printed a portion of it in his brief, and the report in full is in an appendix to his brief. In part, the report states: "Since no lesion existed prior to the injury, and the depigmentation started shortly afterward, a cause and effect relationship is quite possible." In Charlton Bros. Co. v. Garrettson, 188 Md. 85, 94, 51 A. 2d 642, this Court said: "The law requires proof of probable, not merely possible, facts, including causal relations. * * *. But sequence of events, plus proof of *possible* causal relation, may amount to proof of *probable* causal relation, in the absence of evidence of any other equally probable cause."

causal connection between the accident and the necessity of removing the breast.

In a carefully-considered and well-reasoned opinion (the case seems to be a leading one upon the subject now under consideration) the appellate court reversed. In the course of the opinion the Court said:

> "We concede that in the great majority of cases such testimony [testimony of experts] ordinarily is necessary because of the seeming absence of connection between a particular accident and a claimed resulting injury. But in other cases involving special and peculiar circumstances, medical evidence, although highly desirable, is not always essential for an injured employee to make out a prima facie case, especially if the testimony is adequate, undisputed and unimpeached. Thus where, as in the instant case, injury appears in a bodily member reasonably soon after an accident, at the very place where the force was applied and with symptoms observable to the ordinary person, there arises, in the absence of believed testimony to the contrary, a natural inference that the injury, whatever may be the medical name, was the result of the employment. Absolute certainty is not required in any case. If the reasonable probabilities flowing from the undisputed evidence disclose a progressive course of events beginning with an external accident in which each succeeding happening including the injury appears traceable to the one that preceded it medical evidence is not essential for an injured employee to make out a prima facie case."

As indicated above, the trial court should have submitted the question of causal connection between the accident and the loss of pigmentation to the jury. We will, therefore, affirm the judgments on all questions except the one now under consideration, and remand the case for a new trial upon the issue of causal relationship between the accident and the loss of pigmentation, and, if that issue be determined in favor of Mrs.

Wilhelm, the amount of her damages for said loss of pigmentation. These will be the only issues tried upon the new trial.

*Judgment in favor of Donald C. Wilhelm affirmed. Judgment in favor of Grace Wilhelm affirmed in part and reversed in part and case remanded for a new trial upon certain issues. Donald C. Wilhelm to pay one-half of the costs in this court, and the appellee, Paul Edward Burke, to pay the other one-half.*