800 A.2d 23

**Joshua SINGLETON**

v.

**Jerry TRAVERS, et al.**

**David Walters,**

v.

**Joshua M. Singleton.**

**No. 00365, Sept. Term, 2001.**

Court of Special Appeals of Maryland.

June 6, 2002.

John N. Fox, Jr. (Gerald P. Sellers, P.A. on the brief) Baltimore, for appellant, Walters.

George S. Jarosinski (Hassan, Hassan & Tuchman, P.A. on the brief) Baltimore, for appellant/Singleton.

Morton Edelstein of Baltimore, for appellee, Jerry Travers.

Argued before SALMON, BARBERA, and GREENE, JJ.

SALMON, Judge.

This appeal involves consolidated cases where both plaintiffs alleged that they suffered personal injuries arising out of a November 18, 1999, automobile accident. The lawsuits each contain a $25,000 ad damnum clause, and both plaintiffs filed a notice of intent to introduce medical records and writings "without the support of a health care provider's testimony." That notice was given in compliance with section 10–104(c) of the Courts and Judicial Proceedings Article of the Maryland Code (1998 Repl.Vol. & Supp.2001) (hereinafter "section 10–104"). Despite compliance with all the prerequisites of section 10–104(c), a judge, sitting in the Circuit Court for Baltimore City, granted summary judgment against both plaintiffs on the grounds that (1) attorneys for the plaintiffs admitted that they did not intend to call an expert witness at trial; (2) considering the type of injuries alleged to have been occasioned by the subject accident, expert testimony was required to prove that the accident caused the plaintiffs' injuries; and (3) section 10–104 did not allow causation to be established based on opinions expressed in written medical reports introduced pursuant to

section 10–104. We shall reverse the grant of summary judgment.

# I. *FACTS*

## A. *The Accident*

On November 18, 1999, a taxicab driven by Jerry M. Travers ("Travers") was proceeding southbound on Pennsylvania Avenue in Baltimore City when Travers made a U-turn. After completing the turn, Travers's cab was struck in the rear by an automobile driven by seventeen-year-old Joshua Singleton ("Singleton").

## B. *The Lawsuits*

David Walters, a passenger in Travers's vehicle, filed a personal injury suit against Singleton (and the owner of Singleton's vehicle) in the District Court for Baltimore City. Singleton and the vehicle owner filed a prayer for jury trial, and the case was removed to the Circuit Court for Baltimore City. In the circuit court, Walters filed a complaint in which he added Travers and the owner of the cab as defendants. Cross claims for indemnification were filed by Travers and Singleton against one another.

Meanwhile, Singleton filed a separate complaint in the Circuit Court for Baltimore City against Travers. He alleged that he suffered personal injuries as the result of Travers's negligent operation of his taxicab.

## C. *Walters's Medical Documents*

More than nine months prior to the scheduled March 26, 2001, trial date, Walters's attorney filed with the circuit court a notice of his intent to introduce certain medical reports and bills into evidence without calling a health-care provider. The medical reports were from (1) Dr. Stephen D. Rosenbaum, an orthopedic surgeon; (2) Dr. Franz Groll, a general surgeon; and (3) Dr. John Eckholdt, a neurologist. Medical bills from the aforementioned physicians were attached to the notice, along with bills from Mercy Medical Center, the City of

Baltimore, and Mount Vernon Pharmacy. The notice stated that counsel intended to submit the aforementioned medical reports and bills "without live testimony" in accordance with section 10–104 and/or section 10–105 of the Courts and Judicial Proceedings Article.[1]

---

1. Section 10–105 of the Courts and Judicial Proceedings Article of the Maryland Code (1998 Repl.Vol. & Supp.2001) reads:

   (a) *Applicability.*—The provisions of this section apply to a civil action in:

   (1) The District Court; or

   (2) A circuit court if the amount in controversy in the action in the circuit court does not exceed the amount specified in § 4–401 of this article for that type of action.

   (b) *In general.*—(1)(i) Subject to the provisions of this section, a paid bill for goods or services is admissible without the testimony of the provider of the goods or services as evidence of the authenticity of the bill for goods or services provided and the fairness and reasonableness of the charges of the provider of the goods or services.

   (ii) A finder of fact may attach whatever weight to a paid bill that the finder of fact deems appropriate.

   (2) The bill shall be admitted on testimony, by the party or any other person with personal knowledge:

   (i) Identifying the original bill or an authenticated copy; and

   (ii) 1. Identifying the provider of the goods or services;

   2. Explaining the circumstances surrounding the receipt of the bill;

   3. Describing the goods or services provided;

   4. Stating that the goods or services were provided in connection with the event giving rise to the action; and

   5. Stating that the bill was paid.

   (c) *Notice and copy of bill.*—Subsection (b) of this section applies only if, at least 60 days before the beginning of the trial, the party who intends to introduce the bill:

   (i) Serves notice of the party's intent to introduce the bill without the support of the testimony of the provider of the goods or services that were billed, a list that identifies each bill, and a copy of the bill on all other parties as provided under Maryland Rule 1–321; and

   (ii) Files notices of service and the list that identifies each bill with the court.

   (2) The list required under paragraph (1) of this subsection shall include:

   (i) The name of the provider of the goods and services for each bill; and

   (ii) The date of each bill of the provider of the goods and services.

   (d) *Construction of section.*—Nothing contained in this section may be construed to:

The medical records submitted by Walters show that after the accident he was taken by ambulance to Maryland General Hospital. He waited at the hospital for a period of time but left before he was treated. On the day following the accident, Walters was seen by Dr. Groll. He told Dr. Groll that he sustained injuries "to his right chest side, . . . lower back, and . . . head in a motor vehicle accident on November 18, 1999." According to Walters, the impact was severe and resulted in his being "thrown to the side," causing him to strike the right side of his forehead and his right chest into the door. Walters complained of a lump on the right side of his forehead and another lump on the right side of his chest, as well as headaches and soreness in his shoulders that ran down to the pelvic area. The patient also reported that he had pain in the low back. Dr. Groll referred Walters to Dr. Rosenbaum and made the following preliminary diagnosis: "Contusion of forehead, post traumatic headaches, strain/sprain lumbar sacral spine, contusion of the right chest side."

Walters saw Dr. Rosenbaum for the first time on November 29, 1999. His complaint included frontal headaches and pain in the low and mid-back. Dr. Rosenbaum's preliminary diagnosis was similar to that of Dr. Groll. He prescribed medication, physical therapy, and referred him to Dr. Eckholdt for an EEG and a neurology work-up.

On the same day that Walters saw Dr. Rosenbaum, he also was examined by Dr. Eckholdt. He gave Dr. Eckholdt a history of headaches, dizziness, and visual blurring since the November 18 accident. Walters denied previously suffering similar type injuries. Dr. Eckholdt, in his report dated Novem-

---

(1) Apply to proof of the existence of a medical, dental, or other health condition, the opinion of a health care provider, or the necessity and the providing of medical, dental, or other health care;

(2) Limit the provisions of § 10–104 of this subtitle concerning the admissibility of a medical, dental, hospital, or other health care writing or record; or

(3) Limit the right of a party to:

(i) Request a summons to compel the attendance of a witness;

(ii) Examine a witness who appears at trial; or

(iii) Engage in discovery as provided under the Maryland Rules.

ber 29, 1999, opined "that the patient's symtomology ... [was] concussive in origin." Besides an EEG, he scheduled Walters for a CAT scan. Both those tests were normal. Walters received physical therapy between November 29, 1999, and January 10, 2000. He also saw Dr. Rosenbaum, after his initial visit, twice in December 1999 and once, for a final visit, on January 11, 2000. Dr. Rosenbaum's report of January 11, 2000, indicated that his patient had a full range of lumbar spine movement with no pain.

Dr. Rosenbaum's January 11, 2000, discharge report concludes by saying that in his opinion the injuries sustained by Walters "were causally connected to the accident of 11/18/99."

The bills, attached to the notice filed by Walters, showed that his total medical expenses connected with the subject accident were $5,486.23.

## D. *Singleton's Medical Proof*

On January 10, 2001, Singleton's attorney filed a notice, pursuant to sections 10–104 and 10–105, similar to the one filed by Walters. Attached to the notice were five medical reports from Dr. Melencio A. Ventura. The reports show that Singleton saw Dr. Ventura, initially, six days post accident. He told the doctor that his body moved backward and forward in the November 18 accident and he "strained his right shoulder, upper and lower back." He did not lose consciousness and did not receive any immediate medical attention. Singleton nevertheless related that while at home he "started to experience pain in all injured areas, which caused him" to seek medical help. He advised that he "did not have these symptoms prior to this accident." Dr. Ventura's initial diagnosis was "acute musculoligamentous strain of the thoracic and lumbar spine [and] traumatic injury to the right shoulder." Dr. Ventura recommended physical therapy, home exercise, x-ray of the low and mid-spine and a heating pad. On January 10, 2000, Dr. Ventura wrote a report in which she found Singleton to be asymptomatic. Accordingly, she discharged him from further treatment.

About ten months thereafter, on November 13, 2000, Singleton returned to Dr. Ventura's care and reported that "[s]everal weeks ago ... [he] started to experience pain in his lower back again that caused him to return to this office." In a report dated November 13, 2000, Dr. Ventura gave her diagnosis as "traumatic injury of the lumbar spine renewal." She recommended physical therapy, re-evaluation and treatment, home exercises, and medication. Additionally, she recommended that he return for a follow-up visit in ten days. There is no indication in the medical records that were attached to the notice that Singleton ever returned for further treatment.

Besides the five reports from Dr. Ventura, the notice included reports showing that appellant received physical therapy during the four-week period between December 2 and December 29, 1999.

A report by Dr. Gary W. Pushkin, an orthopedic surgeon, was also attached to the motion. According to the report, Singleton saw Dr. Pushkin on December 17, 1999. In reference to injuries received in the subject accident, Dr. Pushkin's "[i]mpression" was "musculoligamentous sprain-strain, cervical spine, post traumatic[;] ... musculoligamentous sprain-strain, lumbar sacral spine, post traumatic."

The total of all medical bills attached to Singleton's notice was $3,125.92.

## II. *TRAVERS'S MOTION FOR SUMMARY JUDGMENT*

On March 26, 2001, the date that trial was set to commence, counsel for Travers filed a motion for summary judgment.[2] Movant maintained that causation could not be established by written medical reports such as those that Singleton and Walters intended to introduce at trial. According to counsel for Travers, a "live" expert was necessary. Counsel for Walters and Singleton (in his capacity as a plaintiff in the suit

---

**2.** The attorney for Singleton who represented him as a defendant in Walters's suit joined in the motion. The attorney for Singleton who represented him as a plaintiff in the suit against Travers vigorously opposed the motion both in the lower court and here.

against Travers) orally protested that the motion for summary judgment was filed too late inasmuch as the pre-trial order governing the consolidated cases required that summary judgment motion(s) be filed no later than November 8, 2000. Additionally, relying on the language of section 10–104, plaintiffs' counsel contended that there was no need to call a live medical expert to prove that their injuries were proximately caused by the subject accident.

After the summary judgment motion was discussed in chambers, a jury was selected. The next morning, on March 27, 2001, the motions judge entertained additional argument concerning the section 10–104 issue. The motions judge then said: "I see no language [in section 10–104] that permits me to allow causation to come in by paper, so to speak." Later, the judge continued, "Anything that is complicated [such as causation] require[s] sophisticated interpretation [which] must be ... conveyed by a witness subject to cross-examination." Because neither Singleton nor Walters had a medical expert prepared to testify in open court as to the issue of causation, the judge granted summary judgment against both plaintiffs and in favor of Travers and Singleton—in his capacity as a defendant in Walters's suit. The cross claims were then dismissed.

### III. *ANALYSIS*

█  Even before section 10–104 was enacted in 1996,[3] it was not always necessary for the plaintiff in a personal injury suit to prove causation by producing a live medical witness. As the Court of Appeals said in the seminal case of *Wilhelm v. State Traffic Safety Commission*, 230 Md. 91, 185 A.2d 715 (1962):

---

3. Since 1996, section 10–104 has been amended twice. Only one of the amendments impacts this case. Effective October 1997, cases filed initially in the circuit court, where the amount in controversy was $25,000 or less, were within the ambit of section 10–104. Prior to the amendment, only circuit court cases that were originally filed in the District Court were subject to the relaxed evidentiary provisions of section 10–104. Here, Singleton's case against Travers was initially filed in the circuit court.

There are, unquestionably, many occasions where the causal connection between a defendant's negligence and a disability claimed by a plaintiff does not need to be established by expert testimony. Particularly is this true when the disability develops coincidentally with, or within a reasonable time after, the negligent act, or where the causal connection is clearly apparent from the illness itself and the circumstances surrounding it, or where the cause of the injury relates to matters of common experience, knowledge, or observation of laymen.

*Id.* at 99, 185 A.2d 715.

■ On the other hand, where the cause of injury claimed to have resulted from a negligent act is a complicated medical question involving fact finding which properly falls within the province of medical experts (especially when the symptoms of the injury are truly subjective in nature, or where disability does not develop until sometime after the negligent act), proof of the cause must be made by such witnesses.

*Id.* at 100, 185 A.2d 715.

Relying on *Wilhelm,* along with *Shpigel v. White,* 357 Md. 117, 741 A.2d 1205 (1999); *Desua v. Yokim,* 137 Md.App. 138, 768 A.2d 56 (2001); *Hunt v. Mercy Medical Center,* 121 Md.App. 516, 710 A.2d 362 (1998); *S.B. Thomas, Inc. v. Thompson,* 114 Md.App. 357, 689 A.2d 1301 (1997); *Chadderton v. M.A. Bongivonni, Inc.,* 101 Md.App. 472, 647 A.2d 137 (1994); and *Yates v. Bair Transport, Inc.,* 249 F.Supp. 681 (S.D.N.Y.1965), the motions judge ruled that whether the injuries claimed by Messrs. Walters and Singleton were caused by the November 18, 1999, accident presented a complicated medical issue. He then opined that if section 10–104 did not allow for medical opinions as to causation to be proven by written reports of physicians, neither plaintiff could prove his case.[4]

---

4. In this appeal, both plaintiffs rely entirely upon section 10–104; they do not contend that causation could have been established even without

By an amendment effective October 1, 1997, section 10–104 applies to all personal injury cases filed in either District Court or circuit court where the amount in controversy is $25,000 or less.[5] *See* § 10–104(b). Sections 10–104(c), (d), (e), and (f) read:

(c) *Admissibility in general.*—(1) A writing or record of a health care provider [6] described in this section is admissible under this section if:

(i) The writing or record is offered in the trial of a civil action in the District Court, or a circuit court;

(ii) At least 60 days, except as provided in paragraph (2) of this subsection, before the beginning of the trial, the party who intends to introduce the writing or record:

1. Serves notice of the party's intent to introduce the writing or record without the support of a health care

---

section 10–104. It would appear, however, based on *Wilhelm* and its progeny, that at least some of Walters's injuries (*e.g.*, the lump on the side of his head, which was present on November 19, 1999, when Dr. Groll examined him) would not have required expert testimony as to causation even if section 10–104 had never been enacted.

**5.** Section 10–104(b)(3) provides:

Subject to the provisions of paragraphs (1) and (2) of this subsection, the provisions of this section apply to a proceeding in:
(i) The District Court; or
(ii) A circuit court if the amount in controversy in the action in the circuit court does not exceed the amount specified in § 4–401 of this article for that type of action.
Section 4–401 specifies $25,000 as the District Court's jurisdictional limit.

**6.** The term "health care provider" has the same meaning in section 10–104 as in section 3–2A–01 of the Courts and Judicial Proceedings Article, *i.e.:*

a hospital, a related institution as defined in § 19–301 of the Health–General Article, a physician, an osteopath, an optometrist, a chiropractor, a registered or licensed practical nurse, a dentist, a podiatrist, a psychologist, a licensed certified social worker-clinical, and a physical therapist, licensed or authorized to provide one or more health care services in Maryland. "Health care provider" does not mean any nursing institution conducted by and for those who rely upon treatment by spiritual means through prayer alone in accordance with the tenants and practices of a recognized church or religious denominations.

provider's testimony, a list that identifies each writing or record, and a copy of the writing or record on all other parties as provided under Maryland Rule 1–321; and

2. Files notice of service and the list that identified each writing or record with the court; and

(2) A party, who receives a notice under paragraph (1) of this subsection and intends to introduce another writing or record of a health care provider without a health care provider's testimony shall:

(i) Serve a notice of intent, a list that identifies each writing or record, and a copy of the writing or record at least 30 days before the beginning of the trial; and

(ii) File notice of service and the list that identifies each writing or record with the court.

(3) The list required under paragraphs (1) and (2) of this subsection shall include:

(i) The name of the health care provider for each writing record; and

(ii) The date of each writing or record of the health care provider or each date of treatment by the health care provider.

(d) *Supporting testimony—Writings or records to document condition, opinion or provision of health care.*—(1) A writing or record of a health care provider made to document a medical, dental, or other health condition, *a health care provider's opinion,* or the providing of health care is admissible without the support of the testimony of a health care provider as the maker or the custodian of the writing or record as evidence of the existence of a medical, dental, or health condition, the *opinion,* and the necessity and the providing of health care.

(2) A finder of fact may attach whatever weight to a writing or record that the finder of fact deems appropriate.

(e) *Same—Written statement or bill for expenses.*—(1) A written statement or bill for health care expenses is admissible without the support of the testimony of a health care provider as the maker or the custodian of the state-

ment or bill as evidence of the amount, fairness, and reasonableness of the charges for the services or materials provided.

(2) A finder of fact may attach whatever weight to a writing or record that the finder of fact deems appropriate.

(f) *Construction of section.*—Nothing contained in this section may be construed to limit the right of a party to:

(1) Request a summons to compel the attendance of a witness;

(2) Examine a witness who appears at trial; or

(3) Engage in discovery as provided under the Maryland Rules.

(Emphasis added.)

In construing section 10–104(d), the motions judge acknowledged that the necessity for medical treatment could be established by documentary evidence, and the records of the doctor could also be introduced for the purpose of showing the fairness and reasonableness of the charges for medical services or materials. Likewise, the court conceded that reports could be introduced to prove the condition from which the plaintiffs suffered and to show that medical services were provided to the plaintiff(s). Nevertheless, the lower court ruled that the opinion of the health care provider as to the causative nexus between the accident and the plaintiffs' injuries could not be established simply by the introduction of a written medical report.

In reaching this conclusion, the motions judge focused upon the phrase "the opinion" as used in section 10–104(d). He said that the phrase could mean "virtually anything," and therefore he "could not fathom" what the General Assembly intended. In the motions judge's words, "What's missing from the formula [set forth in section 10–104] is the big word, the 'C' word, causation. I read 10–104 as saying it does not permit causation to be established by ... [a physician's written report]."

Ordinarily, the "legislative intent of a statute primarily reveals itself, through its very words." *See Derry v. State,* 358 Md. 325, 335, 748 A.2d 478 (2000) (citing *Harris v. State,* 353 Md. 596, 606, 728 A.2d 180 (1999), and *Marriott Employees v. MVA,* 346 Md. 437, 444–45, 697 A.2d 455 (1997)). An appellate court usually views "the words of a statute in ordinary terms, in their natural meaning, in the manner which they are most commonly understood." *See Derry,* 358 Md. at 335, 748 A.2d 478 (citing *Sacchet v. Blan,* 353 Md. 87, 92, 724 A.2d 667 (1999), and *Whack v. State,* 338 Md. 665, 672, 659 A.2d 1347 (1995)). "If the words of a statute clearly and unambiguously delineate the legislative intent, ours is an ephemeral enterprise; we investigate no further but simply apply the statute as it reads." *Derry,* 358 Md. at 335, 748 A.2d 478.

Leaving out verbiage unnecessary to decide the issue here presented, section 10–104(d) reads: "A writing . . . of a health care provider made to document . . . a health care provider's opinion . . . is admissible without the support of the testimony of a health care provider as the maker . . . of the writing . . . to prove the existence of . . . the opinion." Under a plain reading of that statute, the medical reports of Singleton and Walters should have been admissible to prove causation.

It is true, as the motions judge stressed, that the statute does not say explicitly that the opinion of a health care provider regarding causation may be admitted without the presence of the doctor in court. But the word "opinion" as used in section 10–104(d) is completely unrestricted. Under such circumstances, the failure to explicitly mention one type of opinion as admissible (*i.e.,* causation) does not make the statute ambiguous.

Prior to the enactment of section 10–104, health care providers who testified in personal injury cases, routinely (and legitimately) offered live opinion testimony regarding a wide range of subjects not specifically mentioned in section 10–104(d), *e.g.,* extent of disability, permanency of injury, likely duration of symptoms, ability to work post injury, future

employability, *etc.* Because the word "opinion" was unqualified, the drafters of section 10–104(d) had no reason to say specifically what particular type of opinions would be admissible. From the unrestricted language used in the statute, it seems evident that the General Assembly intended *any* opinion of a health care provider expressed in a written report to be admissible so long as the opinion was "otherwise admissible." [7]

Travers argues that section 10–104 must be "strictly construed" because it is in derogation of common law. We agree that the statute should be strictly construed. But this does not allow us to overlook the plain language used by the legislature nor to overlook the obvious intent of the legislation.

In regard to the legislative intent, Travers candidly acknowledges that section 10–104 was enacted "to lessen the burden on the court system and [p]laintiffs [in cases where $25,000 or less is at issue] by eliminating the need for expert medical testimony to prove the basic elements of a personal injury damage claim." We agree with appellee's assessment of the General Assembly's intent. This, however, creates a strong reason for rejecting the motions judge's interpretation of the statute. Before 1996, in most personal injury cases where $25,000 or less was at stake, causation was required to be established by a live expert because plaintiff's alleged injuries were subjective and the plaintiff suffered no immediate post-accident disability. If the motions court's view were to prevail, in every case where a live health care provider's testimony was needed before section 10–104 was enacted, a live expert would still be needed. This would defeat the legislature's purpose of proving "the basic elements of a

---

7. As set forth in section 10–104(c)(2)(iii), to be introduced, the writing or record must be "otherwise admissible." For example, a doctor's report that contained opinions that were not relevant to the case would be inadmissible even if the party seeking to utilize Rule 10–104 had otherwise complied with the statute. In his brief, Travers's counsel did not contend that the reports were irrelevant or "otherwise inadmissible" or that the reports of either Walters or Singleton did not, on their face, establish causation.

plaintiff's case without live expert testimony." Moreover, the lower court's interpretation would render the word "opinion" in section 10–104(d) meaningless. This would violate a central rule of statutory construction. *Adamson v. Correctional Medical Services*, 359 Md. 238, 252, 753 A.2d 501 (2000) (If possible to do so, we interpret statutes so as to render "no part of the law surplusage.").

**JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS; COSTS TO BE PAID BY APPELLEES.**