900 A.2d 295

**Inci KANTAR**

v.

**GRAND MARQUES CAFÉ, et al.**

**No. 0665, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

June 7, 2006.

Matthew Peffer (Chasen & Boscolo, Chtd., on brief), Green-belt, for appellant.

James A. Haynes, Towson, for appellee.

Panel HOLLANDER, ADKINS and BARBERA, JJ.

ADKINS, J.

Alleging worsening of the disability for which she receives workers' compensation benefits, appellant Inci Kantar unsuccessfully petitioned to increase her permanent partial disability to permanent total disability. She appealed the Workers' Compensation Commission's denial of her petition to the Cir-

cuit Court for Montgomery County. At the close of Kantar's case, the trial court granted the employer's and insurer's [1] motion for judgment on the ground that Kantar failed to present any expert medical testimony to show that her disability worsened as a result of accident-related conditions. Kantar challenges that ruling, arguing that it amounted to an erroneous shifting of the burden of proof, and that an expert medical opinion is not necessary. We disagree with both contentions and affirm the judgment.

## FACTS AND LEGAL PROCEEDINGS

On August 24, 1998, Kantar slipped and fell while working at the Grand Marques Café, a restaurant that she owned jointly with her husband.[2] On June 15, 2001, the Workers' Compensation Commission determined that Kantar had a 75% permanent disability to her head, neck, and back, with 5% of that disability being the result of pre-existing conditions unrelated to her compensable accident.

In 2004, the Commission granted Kantar's petition to re-open her case in order to consider her claim that her accident-related disabilities had worsened as a result of accident-related causes. At the outset of the hearing, counsel for the employer and insurer pointed out that Kantar had a significant history of non-accident-related conditions, both before and after the 2001 order. These included coronary artery bypass surgery in 2000; ongoing treatments for diabetes, hypertension, and thyroid conditions; and surgery to relieve carpal tunnel conditions. Kantar admitted that she had neither sought nor received medical treatment for her 1998 injury since the last Commission hearing in August 2001. She also testified that she had not worked since the 1998 accident.

On August 26, 2004, the Commission rejected Kantar's contention that her condition had worsened to the point of

---

1. The employer is Grand Marques Café. The insurer of record for the employer is the Injured Worker's Insurance Fund.

2. Kantar no longer holds an interest in that business.

permanent total disability as a result of accident-related conditions. Instead, the Commission found that "any increase in the claimant's permanent disability is due to a post accidental injury, non-related conditions[.]"

Kantar appealed the Commission's decision and the matter proceeded to a jury trial. Kantar testified on cross-examination that, since August 2001, she experienced "sharp pain" in her "left leg." She admitted that she complained at the 2001 Commission hearing about many of the same symptoms that she was complaining of now—severe headaches, an inability to walk more than a block and a half, and limited movement in her neck. When counsel questioned her with a transcript of her 2001 testimony that she had been suffering numbness, shaking, and pain in both legs and her toes, Kantar testified that, although her legs and neck were "bothering" her in 2001, they "hurt her more now[.]" It was "really getting worse. . . . [I]t's not like before."

With respect to her heart condition, Kantar testified that since her 2000 coronary surgery, she had been under doctor's care and medication. She was under instruction "to slow down" and avoid "heavy work" or lifting more than 10 pounds. She denied that, although her husband and son continued to own and manage the restaurant, there was any job that she could do there, given her limitations on standing, walking, and sitting.

Kantar's counsel also read into the record portions of the May 4, 2005 deposition testimony of Dr. Clifford Hinkes, who examined Kantar in both 2001 and 2004. Dr. Hinkes offered the following opinion:

> The great bulk of Ms. Kantar's problems are unrelated to the accident. Clearly, her medical problems are the most significant ones. And they are heart disease, high blood pressure, diabetes, ulcer disease, hyperthyroidism, obesity, carpal tunnel syndrome, pinched nerve in the arms. Those conditions dwarf the neck issue and the back issues. The neck issue, which in my opinion is due to the accident is relatively a more minor problem for her.

Kantar's final witness was Trudy Koslow, a vocational rehabilitation counselor who met with Kantar in November 2000. She reviewed medical records at that time, as well as Kantar's efforts to find a sedentary job in which she would not be required to lift more than 10 pounds. Koslow opined in 2001 that "there really weren't any sedentary jobs for which she qualified." Koslow reviewed reports prepared by Dr. Macht in both 2000 and 2004, noting that in 2004 Macht "indicate[d] that at this time that she would be disabled from any job that requires any stress or strain or her neck .... [b]ack, or right leg."

On cross-examination, Koslow confirmed that she had not seen Kantar since November 28, 2000. Moreover, she does not "offer medical opinions." With respect to Dr. Macht's opinion that Kantar needs to avoid strain and stress on areas of her body that were injured in 1998, Koslow merely assumed that opinion was correct. She received all the records she reviewed from Kantar's attorneys, and did not know that there were other medical records and reports on Kantar from Dr. Hinkes.

At the close of Kantar's case, the trial court granted judgment in favor of the employer and insurer:

[W]e have exactly the same case in 2001 recooked in 2004 with no medical testimony to indicate how the condition [has] worsened and how that's going to impact on her employability.... [I]n light of [*S.B. Thomas, Inc. v. Thompson,* 114 Md.App. 357, 689 A.2d 1301 (1997) ] and the testimony in this case, even looking at it in a light most favorable to the plaintiff[,] ... **the plaintiff has not made a prima facie case and I don't believe can do so without medical testimony to talk about the ... total disability now being as a result of the head, neck and back injury worsening,** as opposed to[,] as the Commission found, any increase in the ... disability [being] ... due to a post-accidental injury non-related conditions. (Emphasis added.)

Kantar filed this timely appeal.

## DISCUSSION

Kantar complains that, "on the issue of whether or not she has sustained any increase in disability as a result of her head, neck and back injury, ... the evidence is legally sufficient to generate a question for the jury[.]" In addition, she asserts that the court improperly placed the burden on her to prove worsening even though the Commission's grant of her petition to reopen her case constituted a ruling in her favor on the issue of whether her disability had worsened. We find no merit in either argument.

### Burden Of Proving Worsening

█ We begin with the threshold question whether the court erred in requiring Kantar to prove worsening of her accident-related disability. Kantar contends that the Commission's decision to reopen her case must be treated as a substantive decision that her condition did worsen, and accorded a presumption of correctness pursuant to Md.Code (1991, 1999 Repl.Vol., 2005 Cum.Supp.), section 9–745(b) of the Labor and Employment Code (LE), which provides that, in appeals from the Workers' Compensation Commission to the circuit court,

(1) the decision of the Commission is presumed to be prima facie correct; and

(2) the party challenging the decision has the burden of proof.

Kantar misunderstands the significance of the Commission's reopening of her case. That ruling merely reflects the Commission's determination that Kantar *pleaded* sufficient facts to state a viable claim that her condition has worsened due to accident-related conditions. It does not constitute a ruling that there is sufficient *evidence* to establish a *prima facie* case of accident-related worsening. By analogy, the grant of a petition to reopen a claimant's case is like the denial of a motion to dismiss in circuit court, in that both constitute merely a preliminary ruling that the allegations in the pleadings state a claim upon which relief might be granted.

For that reason, the Commission's reopening of Kantar's case is not a "decision" entitled to the statutory presumption of correctness. The only "decision" that is before the circuit court on appeal from the Commission is the **denial** of Kantar's petition to modify her permanent partial disability. *See, e.g., Montgomery County v. Ward,* 331 Md. 521, 526–27, 629 A.2d 619 (1993) ("the 'decision' of the Commission which is subject to judicial review under the statutory language is the final order in a case"); *Liggett & Meyers Tobacco Co. v. Goslin,* 163 Md. 74, 78, 160 A. 804 (1932) (appeal is from the Commission's order, not from its findings or opinions). Only the order by which the Commission disposes of a case qualifies as a decision within the meaning of LE section 9–745(b). *See Paolino v. McCormick & Co.,* 314 Md. 575, 583, 552 A.2d 868 (1989); *Great Am. Ins. Co. v. Havenner,* 33 Md.App. 326, 332, 364 A.2d 95 (1976).

■ In this case, the Commission's final order, and therefore its decision, was to deny Kantar's petition to modify her workers' compensation benefits. Therefore, Kantar had the burden of proving that her compensable disability worsened as a result of accident-related causes. *See, e.g., Baltimore County v. Kelly,* 391 Md. 64, 75, 891 A.2d 1103 (2006) ("Where the employer prevails before the Commission and the claimant elects to appeal employing an essentially *de novo* trial method," the parties retain the same burdens of proof and persuasion they had before the Commission).

### Need For Expert Medical Evidence Of Accident–Related Worsening

■ The trial court concluded that, without expert medical evidence of worsening caused by accident-related conditions, Kantar would not be able to meet her burden of proof. Kantar argues that "[t]he issue of nature and extent of disability does not require expert medical testimony." In Kantar's view, her own testimony, the testimony of her vocational expert, and the deposition testimony of two physicians who examined her, collectively provided sufficient evidence to go to the jury on that issue.

Reviewing the evidentiary record in the circuit court in the light most favorable to Kantar, we agree with the circuit court that expert medical testimony was necessary to prove worsening attributable to her 1998 accident. In *Wilhelm v. State Traffic Safety Comm'n,* 230 Md. 91, 185 A.2d 715 (1962), the seminal Maryland case governing when expert medical testimony is necessary in negligence cases, the Court of Appeals recognized that

[t]here are, unquestionably, many occasions where the causal connection between a defendant's negligence and a disability claimed by a plaintiff does not need to be established by expert testimony. Particularly is this true when the disability develops coincidentally with, or within a reasonable time after, the negligent act, or where the causal connection is clearly apparent from the illness itself and the circumstances surrounding it, or where the cause of the injury relates to matters of common experience, knowledge, or observation of laymen. However, where the cause of an injury claimed to have resulted from a negligent act is a complicated medical question involving fact[-]finding which properly falls within the province of medical experts . . . proof of the cause must be made by such witnesses.

*Id.* at 99–100, 185 A.2d 715 (citations omitted).

In the context of Workers' Compensation claims, we may substitute "compensable accident" for "negligent act" and "disability" for "injury." Then, we apply these same standards for determining whether the claimant can prove a causal connection between her compensable accident and her disability. *See Belcher v. T. Rowe Price Foundation, Inc.,* 329 Md. 709, 732–33, 621 A.2d 872 (1993).

Writing for this Court in *S.B. Thomas, Inc. v. Thompson,* 114 Md.App. 357, 381–82, 689 A.2d 1301 (1997), Judge Moylan framed a four-part test for determining whether expert testimony is necessary to create a jury question on causation:

A genuine jury issue as to the causal relationship between an earlier injury and a subsequent trauma may sometimes be generated, even in the absence of expert [medical] testi-

mony, when some combination of the following circumstances is present: **1) a very close temporal relationship between the initial injury and the onset of the trauma; 2) the manifestation of the trauma in precisely the same part of the body that received the impact of the initial injury; 3) .... some medical testimony, albeit falling short of a certain diagnosis; and 4) an obvious cause-and-effect relationship that is within the common knowledge of laymen.** (Emphasis added and citations omitted.)

We review the circuit court's decision to grant judgment because expert medical evidence is lacking to determine whether it is "legally correct." *See Desua v. Yokim,* 137 Md.App. 138, 143, 768 A.2d 56 (2001).

Applying these standards, we have no trouble concluding that expert medical testimony was necessary in this instance. The burden was on Kantar to prove not only that her condition was materially worse than it was in 2001, but also to establish a causal link between that worsened condition and the August 1998 compensable accident. The Commission concluded that it did not need to decide whether Kantar's disability had worsened because "any worsening" that may have occurred was not the result of accident-related causes. The court, in turn, correctly concluded that Kantar could not prove such causation without expert medical testimony.

Kantar herself offered no proof of causation. Her testimony about her current condition related solely to the worsening prong of her case. She did not suggest that there was a causal link to the 1998 accident. Similarly, neither of the cited deposition transcripts from the doctors who examined Kantar contain evidence of such a link.

We do not consider Dr. Hinkes's deposition testimony to be evidence that satisfies Kantar's burden. Dr. Hinkes did not testify that Kantar's accident-related disability worsened between his examinations of her in 2001 and 2004, much less that the 1998 caused such worsening. To the contrary, Dr. Hinkes opined that "[t]he great bulk of Ms. Kantar's problems are

unrelated to the accident[,]" that her "significant" medical "problems" include "heart disease, high blood pressure, diabetes, ulcer disease, hyperthyroidism, obesity, carpal tunnel syndrome, pinched nerve in the arms[,]" and that "[t]hose conditions dwarf the neck issue and the back issues." Although he opined that "[t]he neck issue ... is due to the accident[,]" he characterized it as "a more minor problem for her."

Kantar's reliance on Dr. Macht's opinion is also unavailing, because that evidence was not made part of the record. Moreover, although we learn through Kantar's vocational expert that Dr. Macht wrote reports in 2000 and 2004, and that he "indicate[d]" in 2004 "that she would be disabled from any job that requires any stress or strain on her neck[,]" there again is no evidence that Dr. Macht considered Kantar's condition to have worsened between visits, much less that he attributed any worsening to the 1998 accident rather than to the serious "medical problems" outlined by Dr. Hinkes.

Similarly, Ms. Koslow's expert testimony regarding Kantar's prospects for employment was not a substitute for expert medical evidence of causation. We have not been directed to any evidence that Koslow rendered an expert opinion that Kantar's condition had worsened or that such worsening occurred as a result of accident-related conditions. That is not surprising, because Koslow was neither qualified nor asked to opine about those issues.

Given the intervening years and the multitude of other physical conditions that could be causally linked to the heightened leg and neck pain of which Kantar complained, the trial court correctly ruled that Kantar could not prove causation without expert medical testimony. Both the worsening and causation elements of Kantar's claim required medical knowledge that was not "within the common knowledge of laymen." *S.B. Thomas,* 114 Md.App. at 382, 689 A.2d 1301.

In the absence of such evidence, the Commission did not err in concluding that "any increase in the claimant's permanent disability is due to a post accidental injury, non-related condi-

tions" such as circulatory problems that may arise secondary to diabetes, heart disease, hypertension, or hyperthyroidism. Moreover, the trial court did not err in granting judgment in favor of the employer and insurer.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**